ROBERT L. ROWAN v. K. W. McKEE, INC.

114 N. W. (2d) 692.

April 19, 1962—No. 38,467.

*A. Patrick Leighton* and *Faricy, Moore & Costello,* for appellant.
*F. L. Palarine,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order denying defendant's motion for summary judgment. The questions involved were certified by the trial court as important and doubtful.[1]

The case arises out of a discharge of plaintiff by defendant. At the time of such discharge plaintiff had been employed by defendant as an over-the-road truckdriver for about 6 years. As such employee, he was a member of General Drivers, Helpers and Truck Terminal Employees Union, Local No. 120, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, referred to hereinafter as Local 120, which had negotiated an employment contract with defendant as bargaining representative of defendant's employees. The employment contract contained these pertinent provisions:

## "ARTICLE II

### "UNION SHOP AND DUES DEDUCTION

*"Section 1* (a) The Union shall be the sole representative of those classifications of employees covered by this Agreement in collective bargaining with the Employer. The Employer agrees that any and all employees within the classifications of work as herein provided shall be members of the Union in good standing as a condition of continued employment. * * *

"(b) A new employee shall be employed only on a thirty day trial basis, during which period he may be discharged without further recourse, provided however, that the Employer may not discharge or discipline for the purpose of evading this Agreement or discriminating against Union members. After thirty days the employee shall be placed on the regular seniority list.

\* \* \* \* \*

---

[1]Such order is appealable. House v. Hanson, 245 Minn. 466, 72 N. W.

## "ARTICLE X

## "DISCHARGE

"The Employer shall not discharge any employee without just cause, and shall give at least one warning notice of the complaint against such employee to the employee in writing, and a copy of same to the Union, except that no warning notice need be given to an employee before he is discharged if the cause of such discharge is dishonesty, major violation of company rules that do not conflict with this agreement, or drinking while on duty. Any employee may request an investigation as to his discharge and should such investigation prove that an injustice has been done an employee he shall be reinstated and compensated at his usual rate of pay while he has been out of work. Appeal of discharge must be taken within five (5) days by written notice and a decision reached within ten (10) days from the date of discharge. Company rules must be posted in a conspicuous place.

\*   \*   \*   \*   \*

## "ARTICLE XXIII

## "ADJUSTMENT OF GRIEVANCES

"Any controversy arising over the interpretation of or the adherence to the terms and provisions of this Agreement shall be submitted in writing, in duplicate form, by the Union to the Employer within twenty (20) days from date of the last alleged violation, and shall be adjusted by negotiations between the Union and the Employer. Such complaint shall state the number or numbers of articles in the Agreement claimed to have been violated and shall be limited in scope to redress for violations occurring on and after the effective date of this Agreement. Failing settlement on that basis, it may be referred to a Board of Arbitration composed of two representatives of the Union, two representatives of the Employer, and a fifth neutral party selected by a majority vote of the first four. The majority decision of this Board of Arbitration shall be final and binding on both the Union and the Employer in any controversy so settled."

---

(2d) 874; In re Estate and Guardianships of Williams, 254 Minn. 272, 95 N. W. (2d) 91.

On March 25, 1958, plaintiff drove an auto transport truck under a bridge near Spooner, Wisconsin. The bridge lacked sufficient clearance. The load, a new pickup truck, was demolished. On March 25, 1958, defendant sent a letter to plaintiff informing him that due to the present accident and a previous one he was dismissed from its employ.[2]

In support of its motion for summary judgment, defendant submitted two affidavits. One was by Stanley T. Olson, the business agent of plaintiff's union, who stated that he was acquainted with plaintiff and that at no time after his dismissal did plaintiff request Local 120 to initiate any grievance procedure to contest the validity of his dismissal or to intercede in any way. The second affidavit was by A. F. Denk, an employee of defendant, who stated that no investigation pursuant to Article X of the union agreement was ever requested by plaintiff nor were any proceedings ever commenced by Local 120 pursuant to Article XXIII.

In opposition to these affidavits, plaintiff, in an affidavit and in a deposition, stated that before he received the dismissal letter he was called by D. N. Keefe, an employee of defendant, and told to collect

---

[2] "25 March 1958

"To: Robert Rowan

"On March 25th you demolished a Pickup on your load by hitting a bridge due to your own negligence in not checking for your overhead height before entering the bridge.

"In July of 1957 you were involved in an accident with another one of our rigs in Montana and at that time you were told that because of a company rule which we had set up, you were dismissed from our employ. At that time you talked to Mr. McKee and Mr. McKee gave you another chance, stating that any more damages or accidents for which you were liable would result in your immediate dismissal. In fact, he told you at that time to leave the truck and never come back, and you agreed to this with Mr. McKee in our presence.

"Because of the carelessness and negligence shown in this last accident of hitting the bridge, we are forced to dismiss you from our employ as of this date.

"Yours very truly,
"K. W. Mc KEE, INC.
"By: A. F. Denk"

his pay checks. When he asked, "What for?" Keefe replied, "You are fired," and, when he wanted to know why he was fired, Keefe said, "You know why." He collected his pay checks and claims that he told one Bob Plum, an employee of defendant, that he was going to demand a full investigation. Plum told him to go down and see Stanley Olson, the business agent of the union. Plaintiff contends that thereafter he did see Olson and was informed that Olson would send a written appeal to defendant. That plaintiff understood the nature of his contract is evident from his testimony taken in the deposition. He there said:

"Q   You said you wanted a full, written appeal. What did you mean by that, Mr. Rowan?

"A   Well, according to my contract, I had my right for a written appeal.

"Q   And that's an appeal to the company, is it?

"A   That's an appeal to the company.

"Q   And the union presents that for you, do they?

"A   They can present it if you want them to. You can present it yourself.

"Q   And you wanted the union, you asked the union to present it?

"A   I asked the union to do it."

Plaintiff claims that shortly after he had this discussion with Olson he returned to the office of Mr. Plum, defendant's employee, and was informed that an appeal had been submitted by Olson and that thereafter he was put off by Olson for some time. Within 30 days after his discharge, plaintiff dropped his membership in the union and subsequently commenced this action in the district court.

Defendant, in its answer, sets up several defenses, among which is a claim that plaintiff has failed to exhaust his administrative remedies under his contract and that he is barred from bringing an action in court until he has done so. In its memorandum accompanying its order denying defendant's motion for summary judgment, the court found that plaintiff had not complied with Article X of the employment contract, nor had the union complied with Article XXIII. Being somewhat doubtful as to the legal rights of plaintiff, the court denied

the motion and certified the question here as important and doubtful. The only question before us is whether an employee, under the circumstances presented here, may maintain an action in court to recover damages for wrongful discharge without resorting to the administrative remedies provided in his employment contract.

Plaintiff cites authorities dealing generally with arbitration provisions in ordinary contracts and the lack of necessity of exhausting the remedies provided by such provisions.[3]

Whatever the law may be respecting ordinary contracts, it is wholly unrealistic to ignore the difference between collective bargaining labor contracts and contracts of a different type. Such a labor contract is not entered into between two contracting parties, as is the case with ordinary contracts. It is an agreement between an employer and a union representing a multitude of individuals. Under it, employer, union, and employees all acquire rights and all should be bound by the obligations of the agreement. Proceedings for the expeditious and inexpensive settlement of grievances are established as a means of maintaining the overall functioning of this employer-union-employee relationship. This interdependence of rights and obligations of the parties to such a contract dictates a consideration of them as a special class of contracts without reference to the law generally applicable to contracts.

The procedure established for settlement of grievances is often the most important part of a union contract. Unresolved grievances lead to industrial strife and often to work stoppage by strike or otherwise unless amicably settled. In an excellent article by Professor Archibald Cox, *Rights under a Labor Agreement,* 69 Harv. L. Rev. 601, many of the problems involved in such contracts are discussed. The importance of adhering to procedure for the settlement of grievances as provided by such contracts is quite exhaustively explored.

Plaintiff contends that the law in Minnesota is settled by Mueller v. Chicago & N. W. Ry. Co. 194 Minn. 83, 259 N. W. 798; Edelstein v. Duluth, M. & I. R. Ry. Co. 225 Minn. 508, 31 N. W. (2d) 465; and

---

[3] Am. Jur., Arbitration and Award, § 44; 6 C. J. S., Arbitration and Award, § 29.

Anderson v. Twin City Rapid Transit Co. 250 Minn. 167, 84 N. W. (2d) 593. None of these cases is decisive.

In Mueller v. Chicago & N. W. Ry. Co. *supra*, plaintiff's grievance resulting from an alleged unlawful discharge was submitted to arbitration. The result was in his favor. His cause of action was based upon his rights established by the arbitration. The case did not involve, nor does our opinion discuss, the question now before us.

Anderson v. Twin City Rapid Transit Co. *supra*, involved an entirely different type of contract negotiated by the employer and the union in anticipation of conversion of its transportation system from streetcars to buses, which, it was known, would result in many employees being laid off or transferred from one job to another. The contract provided largely for arbitration of the order of layoff or transfer. Without taking any steps to set up arbitration machinery, the employer laid off many employees. We simply held that the employer, by failing to take action to set up an arbitration board and by failing to demand arbitration in its answer when suit was brought, had waived any right to insist on it.

Edelstein v. Duluth, M. & I. R. Ry. Co. *supra*, involved an action against defendant for wrongfully discharging plaintiffs. We recognized that the employment was governed by the Federal Railway Labor Act, 45 USCA, §§ 151 to 188, and held that, in cases involving rights arising under a Federal statute, the decisions of the United States Supreme Court are controlling. We were of the opinion that, in so far as the defense that administrative remedies had not been exhausted was concerned, the law was settled by Moore v. Illinois Cent. R. Co. 312 U. S. 630, 61 S. Ct. 754, 85 L. ed. 1089, which held that under the Railway Labor Act the exhaustion of administrative remedies is not a prerequisite to bringing an action in court for a determination of an employee's rights. However, we held that the suggestion that plaintiffs could not maintain their actions for failure to exhaust contractual remedies would not be considered for the reason that it was raised for the first time on appeal. The decision consequently was not based on this ground.

The decisions of the United States Supreme Court in the area of railway employees are of importance here only in so far as we may

have indicated in the Edelstein case what our views were on the question now before us.

In Moore v. Illinois Cent. R. Co. *supra,* a discharged employee instituted an action in a Mississippi state court for damages, asserting that his discharge was in violation of a collective bargaining agreement. The case was removed to Federal court where plaintiff recovered a judgment. Although the Court of Appeals reversed on a ground not involved here, the judgment was sustained by the Supreme Court. Rejecting the contention that both the District Court and Court of Appeals had erred in failing to hold that Moore's action had been prematurely brought because he had failed to exhaust his administrative remedies, the court said (312 U. S. 634, 61 S. Ct. 756, 85 L. ed. 1092):

"* * * we find nothing in that Act [Railway Labor Act] which purports to take away from the courts the jurisdiction to determine a controversy over a wrongful discharge or to make an administrative finding a prerequisite to filing a suit in court."

The question again came before the court in Slocum v. Delaware, L. & W. R. Co. 339 U. S. 239, 70 S. Ct. 577, 94 L. ed. 795. In that case the railroad sought a declaratory judgment in a New York court interpreting the terms of a collective bargaining agreement with reference to a jurisdictional dispute between two unions. The Supreme Court held that the National Railroad Adjustment Board had exclusive primary jurisdiction to adjudicate disputes involving the interpretation of collective bargaining agreements but defended the Moore case by saying (339 U. S. 244, 70 S. Ct. 580, 94 L. ed. 800):

"Our holding here is not inconsistent with our holding in Moore v. Illinois Central R. Co., 312 U. S. 630. Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board has

power to provide, and does not involve questions of future relations between the railroad and its other employees. If a court in handling such a case must consider some provision of a collective-bargaining agreement, its interpretation would of course have no binding effect on future interpretations by the Board."

The question again arose in Transcontinental & Western Air, Inc. v. Koppal, 345 U. S. 653, 73 S. Ct. 906, 97 L. ed. 1325. There, again, plaintiff was employed by a common carrier subject to the Railway Labor Act. The collective bargaining agreement between the employer and the union provided that the employee would not be discharged without a fair hearing and provided for administrative appeals quite similar to those we have in the present case. The Supreme Court considered the Moore and Slocum cases and came to the conclusion that the Railway Labor Act does not divest a state court of jurisdiction to adjudicate a suit for damages for unlawful discharge, *if the state in which the action is brought permits such recovery without showing a prior exhaustion of administrative remedies.* However, if the action is brought in a state in which a plaintiff must show the exhaustion of remedies, the action does not lie in courts. In that regard the Supreme Court said (345 U. S. 662, 73 S. Ct. 910, 97 L. ed. 1331):

"* * * if the applicable local law, as in Missouri, requires an employee to exhaust his administrative remedies under his employment contract in order to sustain his cause of action, he must show that he has done so."

Finally, in Pennsylvania R. Co. v. Day, 360 U. S. 548, 79 S. Ct. 1322, 3 L. ed. (2d) 1422, it was held that the National Railroad Adjustment Board had exclusive primary jurisdiction over a dispute arising between an employee and his employer under a collective bargaining agreement between the railroad and the Railroad Brotherhood of Locomotive Engineers even after the employee had retired from service.

These cases all involve contracts of employment under the Railway Labor Act and are of value here mainly because the statement in the Edelstein case, upon which plaintiff relies, rests on the Moore case. The decisions of the United States Supreme Court subsequent to Moore

have undermined the foundation of the statement quoted in the Edelstein case. It follows that the Edelstein case no longer is determinative of Minnesota law—first, because it rested on the Moore case, which has since been limited in its scope; second, because the decision in Edelstein was not based on the question involved here; and third, because the question was first raised in the Edelstein case on appeal and was not determined in that case. It follows that the question now presented is one of first impression in this state.

■ The question before us is exhaustively annotated in 72 A. L. R. (2d) 1439. It would serve no useful purpose for us to examine the cases found in this annotation, pro and con, on the subject. The rule followed by the weight of authority is that an action for wrongful discharge may not be maintained where the action is derived from a collective bargaining agreement unless the plaintiff first has exhausted the grievance procedure established by such agreement.[4]

There can be no doubt that plaintiff's right of action here, if he has any, is derived from the collective bargaining agreement negotiated between his union and his employer. Absent such agreement, he would have been employed at will and could have been discharged with or without cause at the will of his employer.

In Jorgensen v. Pennsylvania R. Co. 25 N. J. 541, 559, 138 A. (2d) 24, 35, 72 A. L. R. (2d) 1415, 1431, the New Jersey court said:

"* * * Since the plaintiff's right of redress for a wrongful discharge is created solely by the contract that right is circumscribed by the procedures specified therein to effectuate it. * * *

\* \* \* \* \*

"* * * An employee cannot elect to accept the benefit conferred upon him without being bound to pursue the remedies provided for therein, in the absence of a showing that resort to those remedies would be futile."

The same is true here. Having accepted the benefits of the agree-

---

[4]Annotation, 72 A. L. R. (2d) 1441; 31 Am. Jur., Labor, § 124; 56 C. J. S., Master and Servant, § 28(75).

ment, plaintiff may not ignore the provisions of the agreement under which those rights must be determined. The right to retain his job is circumscribed by the procedures provided in the agreement to retain it. If a tripartite agreement, carefully negotiated and consummated between employer and union, is to have any efficacy, it is essential that the rights of employee, union, and employer all be given effect. Conditions requiring negotiations or arbitration of grievances are intended for the mutual benefit of all parties. They insure a speedy, expeditious, and inexpensive method of determining an employee's right to work or conditions under which he must work.[5] They provide the same benefits for the employer. To insure these rights to one of the parties, and to permit him to ignore the conditions thereof, would destroy the whole plan of collective bargaining contracts. We adopt the general rule stated above.

There may be exceptions, however, to the general rule. Where it can be shown that the employer and union conspire together to defeat the rights of an employee or where it can be shown that it would be futile for the employee to seek redress under the contract, he should not be precluded from asserting his rights in court.[6] The same would follow where the employer has waived his rights to insist upon proceeding under the agreement.[7] Whether a case falls within one of the exceptions ordinarily is a question of fact. In this case, the trial court, in its memorandum, indicates a finding of noncompliance with the grievance procedure of the agreement. Ordinarily, summary judgment would not be granted where questions of fact are to be determined.

The final difficulty in this case lies in the fact that, after waiting a comparatively short time following his discharge, plaintiff concedes that he voluntarily withdrew from the union. The contract under which he claims a right to continued employment is a union contract. Under it, continued membership in the union is a prerequisite to a right to

---

[5]See, Payne v. Pullman Co. 13 Ill. App. (2d) 105, 141 N. E. (2d) 83.

[6]See, for instance, Alabama Power Co. v. Haygood, 266 Ala. 194, 95 So. (2d) 98; Jenkins v. Wm. Schluderberg-T. J. Kurdle Co. 217 Md. 556, 144 A. (2d) 88.

[7]Anderson v. Twin City Rapid Transit Co. 250 Minn. 167, 84 N. W. (2d) 593.

retain his job. Under these circumstances, he has no right to be reinstated since he no longer is a member of the union. His right to back pay until he severed his connection with the union also rests on the contract of employment. In Pennsylvania R. Co. v. Day, 360 U. S. 548, 79 S. Ct. 1322, 3 L. ed. (2d) 1422, the court held that an employee was bound by the Railway Labor Act even after he retired. The same should be true here. If an employee can ignore the grievance procedure set up in the contract simply by withdrawing from the union and thereafter assert his claim in court, without exhausting the grievance procedure set up by the contract, the contract provisions will have little value. It must follow that plaintiff's right to back pay, as well as his right to be reinstated, must be asserted under the employment contract. He has instituted no proceedings personally under the contract to determine these rights. Inasmuch as he no longer is a member of the union, it is doubtful that he has a right to insist that he be represented by it. It would seem to follow that, having voluntarily withdrawn from the union and thereby cut off his right to reinstatement, and having failed to institute proceedings in his own behalf under the contract, he has effectively waived whatever rights he might have had. In any event, it is clear that whatever rights he has must be determined under the procedure provided in the contract and that this action, on the showing made here, does not lie. Consequently summary judgment should have been granted.

Reversed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.