SEDALIA CUNNINGHAM v. FEDERAL CARTRIDGE
CORPORATION.

122 N. W. (2d) 208.

June 14, 1963—No. 38,718.

*William H. Eckholdt* and *Harry H. Peterson,* for appellant.

*Miles Lord,* United States Attorney, and *John J. Connelly,* Assistant United States Attorney, for respondent.

OTIS, JUSTICE.

Plaintiff sues for damages arising out of her discharge from defendant's employment. The trial court held that plaintiff's failure to exhaust established grievance procedures barred her recovery. She appeals from an order denying her alternative motion for judgment n. o. v. or a new trial.

Plaintiff commenced her employment with defendant in January 1951, and except for an absence of several weeks, due to an injury, in

March, June, and July 1953, she remained with defendant in one capacity or another until she was discharged on August 5, 1963. The terms of her employment were governed by the provisions of a collective bargaining agreement with District Lodge No. 77 of International Association of Machinists, A. F. of L., which provided in part:

## Article VII

"Discharges effected by the contractor [defendant] or his representative for violation of plant rules, inefficiency, or other reasons will be subject to review through the established grievance procedure."

## Article XV

"Should a grievance arise which comes under the terms of this Agreement, it shall be dealt with in the following manner:

"(1) An employee in the first instance shall register the grievance in triplicate with the Department Steward, then

"(2) The Department Steward to the Shop Committee which shall submit the grievance to the Labor Relations Department, then

"(3) The Business Representative and/or Shop Committee shall meet with the Director of Labor Relations or his designated representative and if the grievance is not settled satisfactorily within ten (10) working days, then

"(4) To the Board of Arbitration * * *."

Neither party has invoked these provisions of the contract. The only issues are whether resort to arbitration has been waived, and, if not, whether plaintiff was justified in assuming that it would be futile to pursue further her administrative remedies.

The reasons for plaintiff's discharge are not relevant to the questions raised on appeal. Suffice it to say she had sustained a physical disability which incapacitated her for several weeks and prevented her from returning to work until the last week of July 1953. It was defendant's claim that plaintiff was incapable of performing the duties assigned to her. This contention she vigorously denies. In any case, assuming as we must that her version of the termination is correct, it appears that on August 5, 1953, she was told to go to the personnel office of the department to which she had been assigned and the personnel officer there

advised her that the grievance committee had met and decided that she should be terminated because of her inability to do her work. In her own words she summarized the conversation thus:

"I asked him—he said the board had met and decided. I asked him, 'Why wasn't I at the meeting? Wasn't I supposed to have been there?', and he told me they could decide without me being there if they wanted to and there was nothing I could do about it and for me to get out the gate."

About a week after her discharge plaintiff consulted an attorney, apparently for the purpose of initiating proceedings through the Industrial Commission to secure compensation for her injuries. However, she took no steps to press for any arbitration hearing until 8 months had elapsed.

This action was begun in 1955, tried in 1958, and appealed in 1962. Nearly 10 years have now elapsed since the date of her termination. Plaintiff lacks formal education. She testified she inferred from the personnel officer's statement that the union representative had agreed to her discharge, and for that reason she failed to enlist the services of her union steward to pursue the administrative remedies available to her under the collective bargaining agreement. She said:

"* * * [the personnel officer] said he was from the Grievance Board and I thought that meant from the union and Mr. Horn's board that was supposed to have met, so that let me out complete. There wasn't no need me seeing anybody because the Board was supposed to have been on both sides is what I understood."

On cross-examination plaintiff revealed that she had previously asserted grievances both to her employer directly and through a union representative, and that she had secured satisfaction in both instances.

It is the contention of plaintiff that neither party having invoked grievance procedures, they have been waived by both the employer and employee and may not now be asserted as a defense, citing Anderson v. Twin City Rapid Transit Co. 250 Minn. 167, 84 N. W. (2d) 593, and Rowan v. K. W. McKee, Inc. 262 Minn. 366, 114 N. W. (2d) 692. We pointed out in Rowan that the employer in the Anderson case had an

affirmative duty by the terms of the collective bargaining agreement to establish arbitration machinery, and it failed to do so. In Anderson we merely held that the employer waived and repudiated arbitration by answering the employee's complaint on the merits without interposing this defense and without demanding arbitration. By way of contrast, in the instant case defendant specifically alleged in its answer that grievances such as plaintiff's were covered by the union's collective bargaining agreement and that plaintiff had failed to assert her rights within the time specified in the contract.

We hold that the employer was under no obligation to assume the initiative in instituting grievance procedures or establishing an arbitration board, and has effectively protected its right to invoke the provisions of the collective bargaining agreement. The uncontroverted facts do not permit a finding of waiver on the part of defendant.

Our decision hinges on the application of the rule which we adopted in the Rowan case. There we said (262 Minn. 375, 114 N. W. [2d] 697):

"* * * The rule followed by the weight of authority is that an action for wrongful discharge may not be maintained where the action is derived from a collective bargaining agreement unless the plaintiff first has exhausted the grievance procedure established by such agreement.

*   *   *   *   *

"* * * We adopt the general rule stated above.

"There may be exceptions, however, to the general rule. Where it can be shown that the employer and union conspire together to defeat the rights of an employee or where it can be shown that it would be futile for the employee to seek redress under the contract, he should not be precluded from asserting his rights in court."

The only remaining issues are whether plaintiff was justified in assuming it would be futile to invoke the benefits of grievance procedures to which she was entitled and whether this is a jury question. Plaintiff cites United Protective Workers v. Ford Motor Co. (7 Cir.) 223 F. (2d) 49, 48 A. L. R. (2d) 1285, and Stroman v. Atchison, T. & S. F. Ry. Co. 161 Cal. App. (2d) 151, 326 P. (2d) 155. In the Ford Motor

case the court held that plaintiff could resort to litigation without invoking administrative remedies to protect his pension rights because the company had made it clear it was not going to change its position in refusing to recognize plaintiff's claim. This conclusion was based on a statement by the company to the following effect (223 F. [2d] 51, 48 A. L. R. [2d] 1290):

"Whether or not we are compelled to do so legally, we have in fact bargained with you concerning the instant case. No amount of negotiation will reduce Mr. Orloski's age nor eradicate his past participation in the current Plan."

In the Stroman case there was evidence that the employee did not exhaust her administrative remedies because a company official misled her with respect to the higest official to whom she could appeal. Under such circumstances the court held it was a question of fact whether the company was thereby estopped to assert this defense.

We are of the opinion that the authorities cited by plaintiff do not require a finding that she has raised a jury question regarding the futility of pursuing her right to arbitration. Not every conflict in evidence creates a jury issue.[1] Collective bargaining agreements are designed to promote harmonious labor relations. They would soon be emasculated if an employee could ignore established procedures by simply stating she believed them to be futile. It is true plaintiff was unlettered, but she was not without experience. She has readily conceded her familarity with her right to union representation and has acknowledged her previous experience in demanding it. Under such circumstances we hold as a matter of law there was no justification for plaintiff's bypassing the machinery which had been established for resolving the very type of employment dispute with which we are here confronted.[2]

Affirmed.

---

[1]Hanson v. Homeland Ins. Co. 232 Minn. 403, 405, 45 N. W. (2d) 637, 638.

[2]Sensenig v. Radio Corp. of America, 49 Lab. Rel. Ref. Manual 2792, 2795; Holderby v. International Union, etc. 45 Cal. (2d) 843, 849, 291 P. (2d) 463, 467; Barker v. Southern Pac. Co. (9 Cir.) 214 F. (2d) 918.