Victor R. DAVIS, Appellant,

v.

BOISE CASCADE CORPORATION,
Respondent.

No. 49660.

Supreme Court of Minnesota.

Dec. 7, 1979.

Steven A. Nelson, International Falls, for appellant.

Dorsey, Windhorst, Hannaford, Whitney & Halladay and Emery W. Bartle, Minneapolis, for respondent.

SHERAN, Chief Justice.

In this action for wrongful discharge, plaintiff appeals from a summary judgment ordered in defendant's favor, urging that the trial court erred in holding he was required to exhaust administrative remedies provided by the collective bargaining agreement between defendant and Local 159, United Paperworkers International Union, AFL–CIO (the union representing defendant's employees) before he could bring the action and in further holding that Minn. Stat. ch. 182 (1978), the Occupational Safety and Health Act of 1973, does not authorize an individual cause of action for discharge allegedly precipitated by defendant's violations of regulations issued pursuant to that statute. We affirm.

One count in plaintiff's complaint alleged that defendant had breached a contract between it and the union entered in April 1972, in which defendant had agreed to improve the ventilation in plaintiff's work area, as a result of which his working conditions were intolerable and dangerous to his health and had made him unable to complete his shift on July 14, 1975, for which he had been discharged. A second count made the further claim that the discharge was a retaliation calculated to maintain working conditions which violated regulations imposed on defendant under ch. 182. Defendant in response denied that it had breached the 1972 contract provision, that the discharge had been improper, and that it had violated regulations imposed under ch. 182. Defendant further alleged that the grievance procedure in the collective bargaining agreement entered in December 1974 provided the exclusive means for determination of the dispute, that plaintiff's claims were barred for failure to exhaust the remedies provided in the bargaining agreement and that his complaint failed to state a claim upon which relief could be granted. Its motion for summary judgment reiterated these defenses.

The facts pertinent to the issues raised by the motion are largely undisputed. They may be summarized as follows:

Plaintiff worked in the paper-coater area of defendant's plant in International Falls. He was a member of the union and had been a member of the committee which negotiated the collective bargaining agreement in effect from December 21, 1974 to April 30, 1978. This agreement covered the terms and conditions of employment and provided grievance and arbitration procedures for settlement of all contract disputes, including discharge of employees.[1]

---

1. The article dealing with grievances provides in part:

    24.1 It is the policy of the Company and the Union to settle all grievances arising from the operation of this Agreement promptly and in an amicable manner. For the purpose of this Agreement, a "grievance" is defined as any dispute between the Company and the Union, or between the Company and an employee or employees, concerning the interpretation or application of the terms of this Agreement.

    24.2 Any such grievance shall be settled in accordance with the following grievance procedure; each step to be exhausted before resorting to the next step:

a. Any dispute or grievance shall be deemed to have been waived if not presented as a formal grievance by the employee within seven (7) calendar days following either the occurrence out of which the grievance arose or the first date upon which the grievance could reasonably be assumed to have been known to the employee, whichever is the later. The supervisor shall make his reply within seven (7) days.

b. If the dispute or grievance is not settled satisfactorily in the above manner, it shall be

On July 14, 1975, plaintiff came to work at 4 p. m. for an 8-hour shift. He found that the temperature was 122 degrees F. in his work area and told his supervisor he would leave if the area were not cooled by 6 p. m. The temperature at that time was the same and employee then walked off his job although Reynold Lofgren, the floor supervisor, had warned him that leaving work would be a serious breach of the work rules. Lofgren told him by telephone the next day that he was discharged.

On the same day Cecil Misner, treasurer of the local, heard about the incident and scheduled a meeting for July 16 to discuss the matter. On that date employee, Misner, and Ken Dobie, the union's vice president, met with Lofgren and William Smerika, defendant's personnel manager. At the meeting it was explained that plaintiff had complained of the heat and had walked off the job after having been advised that he would be subject to discharge if he did so. Plaintiff acknowledged that these statements were correct. Misner then asked that he, Dobie, and plaintiff be permitted to confer privately. When they did so Misner asked plaintiff if he intended to take the

case further, to which plaintiff said he did not because there was such division in the union between the paper-machine workers and the paper-coater employees that "there really wasn't much of a chance." Misner then said that he would try to have plaintiff's employment record changed to show that he had resigned instead of having been fired. Defendant's representatives agreed to make that change when the meeting resumed. According to plaintiff's deposition, at that time he said, "Okay, you can do what you want, I quit or I'm fired."

Plaintiff said also that he talked to the regional representative for the union a week later and was told that the union would not support him because any grievance filed by him or the union would have little chance of succeeding. Plaintiff admitted, however, that if he had filed a grievance the union would have processed it.

With respect to the alleged violations of regulations issued pursuant to Minn.Stat. ch. 182 (1978), plaintiff admitted he had never filed charges nor discussed alleged violations with the officials administering the statute. In an affidavit in support of

referred to the appropriate superintendent within seven (7) days after the supervisor has rendered his decision or his failure to render a decision within the time limit in step (1). c. If the dispute or grievance is not settled satisfactorily in step (2), it shall be referred within seven (7) days after the appropriate superintendent has rendered his decision to the Resident Manager of the Company or his designated representative, and the International President of the Union, or his accredited representative. If no settlement is made by this latter means, the matter shall be referred within ten (10) days to arbitration.

    \*    \*    \*    \*    \*    \*

24.5 If a grievance is not satisfactorily settled under the foregoing procedure, then upon the written request of either party, made within ten (10) days from receipt by the Union of the decision of the Resident Manager of the Company, or his representative, the matter shall be referred to arbitration.

24.6 In arbitration, the Company and the Union shall select one (1) man; these two (2) shall select a third party. In the event the two arbiters selected by the respective parties are unable to select a third arbitrator within five (5) days from their appointment,

the parties shall request the Federal Mediation and Conciliation Service to submit them a panel consisting of the names of seven (7) qualified arbitrators. Following receipt of the names, the Company and the Union representatives shall alternately strike names from the panel until one remains, with the Union representative having the first strike. The one remaining shall be the third party of the Arbitration Committee. The Arbitration Committee shall hear all evidence in the case which has been referred to it for decision and the Committee shall reconvene within fifteen (15) days after the Committee has concluded the hearing and with all members present render its decision in writing signed by a majority of its members and such decision shall be final and binding upon both parties to this agreement.

    \*    \*    \*    \*    \*    \*

24.8 If an employee feels that he has been unjustly discharged or suspended, he shall present the grievance within seventy-two (72) hours. The seventy-two (72) hour period to begin from the time the employee first learned of the disciplinary action and shall not include Saturday, Sunday or holidays hours.

defendant's motion for summary judgment, its personnel manager averred that to the best of his knowledge no charge had ever been lodged with such officials challenging the working conditions in the area where employee worked.

■ The trial court's determination that plaintiff was required to exhaust his administrative remedies under the collective bargaining agreement was based on the terms of the agreement itself and the decision of the United States Supreme Court in *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) that an employee cannot pursue judicial remedies unless the facts show an excuse for his failure to exhaust the procedures available under the collective bargaining agreement. That decision is controlling since defendant is engaged in interstate commerce, but this court has also recognized the necessity of exhausting contractual remedies. *See Rowan v. K. W. McKee, Inc.*, 262 Minn. 366, 114 N.W.2d 692 (1962); *Cunningham v. Federal Cartridge Corp.*, 265 Minn. 534, 122 N.W.2d 208 (1963). Although the Supreme Court restricted this rule in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), holding that an employee is not limited to the remedies provided by a collective bargaining agreement where the employer has repudiated those procedures or where a union has sole power under the contract to invoke the higher stages of the grievance procedure and wrongfully refuses to process the grievance, in this case there is no evidence either of repudiation of the agreement by defendant nor of breach by the union of its duty of fair representation. To establish a breach of that duty requires proof of arbitrary or bad faith conduct on the part of the union by " 'substantial evidence of fraud, deceitful action or dishonest conduct.' " *Motorcoach Employees v. Lockridge*, 403 U.S. 274, 299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1971) [*quoting Humphrey v. Moore*, 375 U.S. 335, 348, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964)]. *See also Mavis v. Brotherhood of Ry., Airline & S. S. Clerks*, 585 F.2d 926 (8th Cir. 1978); *Augspurger v. Brotherhood of Locomotive Engineers*, 510 F.2d 853 (8th Cir. 1975).

■ Plaintiff claims, however, that, as in *Glover v. St. Louis-San Francisco R. Co.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), the union's acts and attitude made it clear that it would be futile for him to invoke the grievance procedure. *Glover* held that where resort to contractual or administrative remedies would be wholly fruitless, employees' failure to resort to such remedies will not bar judicial review of their claims, a rule recognized by this court in *Rowan v. K. W. McKee, Inc. supra*, and *Cunningham v. Federal Cartridge Corp. supra*. *Glover* is distinguishable from this case in that there the plaintiffs sued both their employer and their union after a period of several years in which they had complained of discrimination to both many times. There, also, plaintiffs requested the union to process a grievance, to which it responded that it would be a waste of time to file a formal complaint and that nothing would ever be done for them. Here, the union officials promptly arranged a meeting after the discharge and succeeded in changing plaintiff's employment record to show a resignation instead of a discharge after plaintiff decided that he would not pursue the matter further. He urges that the union officials did not encourage him to process a grievance and that the union had not insisted on the employer's performance of its agreement to better the working conditions, from which he infers that it would have been futile to resort to the remedies provided by the collective bargaining agreement. At the same time he admitted that the union would have processed his grievance had he decided to follow the contract procedures. Although he cites several cases in which the futility of resort to grievance procedures was held to excuse the plaintiff's failure to exhaust such remedies, in this case plaintiff's evidence requires the conclusion that he himself decided to pursue the matter no further. He was not entitled to ignore the procedures provided by the collective bargaining agreement simply because he believed that he would not be successful. *Cf. Cunningham v. Federal Cartridge Corp. supra; Ellerbrock v. Board*

*of Education, Special School Dist. No. 6,* 269 N.W.2d 858 (Minn.1978). We are required to conclude that plaintiff made no showing which would excuse his failure to invoke the grievance and arbitration provisions in the collective bargaining agreement.

Plaintiff claims, however, that Minn.Stat. ch. 182 (1978) affords him a right to recover for his wrongful discharge. We agree with the trial court that there is no merit in this claim. The only section of the act which even arguably authorizes an action for wrongful discharge is § 182.669 (1978), which provides:

> *Any employee who believes that he has been discharged* or otherwise discriminated against by any person *because such employee has exercised any right authorized under the provisions of sections 182.65 to 182.674,* may, within 30 days after such alleged discrimination occurs, file a complaint with the commissioner alleging the discriminatory act. Upon receipt of such complaint, the commissioner shall cause such investigation to be made as he deems appropriate. If upon such investigation the commissioner determines that a discriminatory act was committed against an employee he shall bring an action against the employer in the district court in the county where the alleged discrimination occurred or in a county where the employer transacts business. The district court may order rehiring of the employee, reinstatement of his former position, fringe benefits, seniority rights, back pay, recovery of compensatory damages, and reasonable attorney fees, or other appropriate relief. *Nothing in this section precludes an employee from bringing an action for relief under this section* or any other provision of law. (Emphasis supplied.)

It is clear that even if defendant had not complied with regulations issued pursuant to ch. 182, nothing in that statute authorized plaintiff to leave his job to require compliance with the regulations. By his own admission he never discussed nor filed charges with the Department of Labor and Industry; thus he was not discharged be-

cause he had "exercised any right authorized under the provisions of sections 182.65 to 182.674." Moreover, any inference from the last sentence of § 182.669 that individuals were accorded a right of action to achieve enforcement of the statute is contradicted by § 182.67, subd. 1 (1978), which provides that the department has sole authority and responsibility for the enforcement of the Occupational Safety and Health Act of 1973.

Affirmed.