ROBERT H. RENSCH v. GENERAL DRIVERS, HELPERS AND TRUCK TERMINAL EMPLOYEES LOCAL NO. 120.

129 N. W. (2d) 341.

June 5, 1964—No. 39,181.

---

[6]Cf. State, by Lord, v. Pearson, 260 Minn. 477, 110 N. W. (2d) 206; In re County Ditch No. 33, Marshall County, 150 Minn. 69, 184 N. W. 374.

*Robins, Davis & Lyons, S. Robins,* and *G. Latimer,* for appellant. *Faricy, Moore, Costello & Hart* and *A. Patrick Leighton,* for respondent.

ROGOSHESKE, JUSTICE.

Plaintiff sued defendant for breach of a contract of employment. The jury awarded him damages, and defendant appeals from an order denying its alternative motion for judgment n. o. v. or a new trial.

Defendant union is an unincorporated association affiliated with and an integral part of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America. As a local union, it is governed by the constitution of the international parent body and its own bylaws. Plaintiff was a member of defendant union since its formation in 1933. During his membership he served as part-time trustee, part-time recording secretary, and from 1943 through 1958 as a full-time business representative. The bylaw creating this position established it as an elective office of the union for a fixed term of 3 years, the holder being subject to removal only for cause. On December 12, 1957, in accordance with the bylaws, plaintiff was reelected as a business representative for a 3-year term commencing on January 1, 1958. At the February 1958 meeting, the bylaws were amended to require compulsory retirement of all "officers, business agents, and employees" at age 65. This amendment was initiated by certain of the members at the December 12, 1957, meeting following plaintiff's reelection and was adopted, despite plaintiff's opposition, by a two-thirds secret ballot at the February 1958 meeting in strict compliance with the bylaws. Plaintiff became 65 on June 10, 1958, but he continued working through December 1958 when he claims, and the jury found, that he was dropped from defendant's payroll and his employment was terminated.

On January 14, 1959, plaintiff's counsel made a written request

to the executive board of defendant to reinstate him to his elected position. Defendant, through its counsel, unconditionally refused. Thereafter in March 1959, plaintiff applied for, and was subsequently granted, a pension from the International Brotherhood effective from January 1, 1959. He did not receive payment of pension benefits until May 1959 when a lump-sum payment was made. He continues to receive and accept such benefits. In March 1959, he also applied for and received a withdrawal card from the union.

Before plaintiff received any pension benefits he returned a retirement gift of $100 sent to him with his last salary check on December 30, 1958, and commenced this action. He alleged, in substance, a breach of contract. Defendant denied that plaintiff's employment was terminated and alleged inter alia that he voluntarily retired and waived any alleged claim for damages by his withdrawal from membership and acceptance of retirement benefits.

The evidence created these fact issues—whether defendant's executive board or officers terminated plaintiff's employment; whether he voluntarily retired; and, if not, whether he thereafter acquiesced in his dismissal and thereby waived or was estopped from asserting his claim for damages. The general verdict in plaintiff's favor established by implication that defendant did in fact terminate plaintiff's employment and that he did not, by word or act, waive or become estopped from asserting his claim for damages. The sufficiency of the evidence to sustain these findings and the amount of damages awarded are not challenged.

■ Defendant's principal contention is that the court erred in ruling as a matter of law that a termination of plaintiff's employment without cause prior to the expiration of his term constituted a breach of his employment contract. Although the record does not explicitly disclose this ruling before the case was submitted to the jury, we agree with defendant that the court's instructions were to the effect that the compulsory-retirement bylaw could not retroactively deprive plaintiff of his right to serve out his elected term and that a dismissal of plaintiff pursuant thereto constituted a breach of his employment contract.

From the inception of this dispute, defendant has consistently main-

tained that plaintiff was contractually bound to any change in the by-laws and thus was compelled to retire under the rule that the constitution and bylaws of an unincorporated association, and any change made pursuant to a power to amend the bylaws, constitute a binding contract between the association and its members. It is undoubtedly true that this is a fundamental rule customarily applied to solve disputes arising between a private association and one of its members.[1] The rule was well expressed in Liggett v. Koivunen, 227 Minn. 114, 120, 34 N. W. (2d) 345, 349, as follows:

"It is well settled that the constitution and bylaws of an unincorporated association, if they are not immoral, contrary to public policy or the law of the land, or unreasonable, constitute an enforceable contract between the members by which their rights, duties, powers, and liabilities are measured. An individual in becoming a member impliedly agrees to abide by, and becomes a party to, this contract."

Under this rule defendant argues that plaintiff is bound by the compulsory-retirement amendment and that his action is barred.

In ruling on defendant's post-trial motions, the court adopted the reasoning of Dotlich v. Slovene Nat. Benefit Society, 179 Minn. 151, 228 N. W. 608, and expressly held that the amendment was not binding on plaintiff because it was unreasonable to give it retroactive effect and thereby cut off plaintiff's accrued right to serve out his term. In the Dotlich case, monthly payments of total-disability benefits to a member of defendant society were terminated following an amendment to the society's bylaws establishing a maximum amount that would be paid for such disability. The amendment was adopted pursuant to a power reserved to alter the bylaws that was expressly recited in the membership certificate. In an action to recover benefits accruing subsequent to the adoption of the amendment and in excess of the maximum established thereby, we held that the amendment constituted a breach of plaintiff's contractual right to benefits which had vested before adoption of the amendment.

---

[1]See, Thibert v. Supreme Lodge K. of H. 78 Minn. 448, 81 N. W. 220, 47 L. R. A. 136.

We are persuaded that the trial court was correct in reaching the same result in this case. Even though the amendment compelling retirement at 65 is clearly in itself a valid exercise of the reserved power to change the terms of the contractual relationship, its retroactive application in violation of rights previously acquired results in a breach of plaintiff's employment contract. It has the same effect on plaintiff's security of employment as would an amendment (equally within the reserved power of the membership) to reduce the number of years of his employment or to remove the limitation on the association's right to discharge him except for cause.

The same result was reached in Costello v. O'Kane, 280 App. Div. 70, 111 N. Y. S. (2d) 174, where action by the union's membership, pursuant to its bylaws, that reduced the number of assistant business managers from five to three was held to render the union liable for damages when it ousted an elected assistant business manager before his term expired. Similarly, in Elevator Operators and Starters' Union v. Newman, 30 Cal. (2d) 799, 186 P. (2d) 1, an amendment to the union's constitution and bylaws which changed the qualifications of the office of treasurer was retroactively applied to remove the holder of the office before his term expired. Although the California court upheld his removal from office on the ground that the right thereto could not be superior to the power of the members to establish policy with respect to any union office by amendment of the bylaws, the officer's claim for back salary founded upon a breach of contract was remanded for trial. The court stated (30 Cal. [2d] 807, 186 P. [2d] 5):

"* * * Save in the case of an agency coupled with an interest, a principal has the *power* to revoke an agent's authority at any time before the agent has completed performance. [Citations omitted.] A principal may, however, curtail his *right* of revocation by contracting not to revoke the authority for a definite time. If the principal does so contract, he still retains the power to terminate the agency, and the termination cannot be prevented by the agent, but a revocation of authority within the designated period renders the principal liable for

damages for the violation of a legal right of the agent, just as in the case of any other breach of contract. [Citations omitted.]"

Plaintiff's action is based upon a breach of contract for which he seeks damages, not reinstatement to his office. The salary he was receiving as a business representative was proper evidence to be considered in awarding damages, but he was neither entitled nor permitted to recover for services not performed, his damages being limited to those which flowed from the breach of contract. Under the bylaws constituting the terms of his contract, he occupied the dual status of member and agent of the union. His rights and duties as an agent cannot be regarded as identical with his rights and duties as a member. Upon his reelection before the adoption of the amendment, he acquired a right to hold his office for a fixed term secure against removal except for cause, which the bylaws expressly made a part of his employment contract with the union. It is well settled that the employer has the power to repudiate an employment contract in violation of the terms thereof, but as a consequence of his breach of a duty not to so terminate, he becomes liable in damages for the wrongful termination.[2]

Under the facts as found by the jury, we hold that the plaintiff was entitled to recover damages for breach of his employment contract.

■ The more difficult question presented is whether the court erred in not dismissing the action for plaintiff's admitted failure to avail himself of the internal procedures provided by the constitution of the International for presenting a grievance against the local union as required by the exhaustion-of-remedies rule recently applied in Rowan v. K. W. McKee, Inc. 262 Minn. 366, 114 N. W. (2d) 692.[3]

---

[2]Potter v. Barton, 86 Minn. 288, 90 N. W. 529; Bang v. International Sisal Co. 212 Minn. 135, 4 N. W. (2d) 113, 141 A. L. R. 657; Horn v. Western Land Assn. 22 Minn. 233. See, Restatement, Agency (2 ed.) §§ 118, 450, 455.

[3]Defendant raised this issue by moving to amend its answer and assert exhaustion as an additional defense when the case was called for trial almost 4 years after it was commenced. The court refused to allow the amendment, holding that under the circumstances defendant was estopped to raise the issue. Failure to exhaust administrative remedies was not again

The provisions affording internal remedies are found in the constitution of the parent union. Article XVIII, § 14(a), requires every member or officer or subordinate body claiming to be aggrieved by an adverse decision to exhaust all remedies provided before resorting "to any other court or tribunal." Article XVIII, § 3(a), so far as pertinent, provides:

"Whenever charges are preferred against a Local Union * * * or other subordinate body, such charges shall be filed in writing in duplicate with the secretary of the trial body, and shall be served personally or by registered or certified mail on the Secretary-Treasurer of the Local Union * * * or other subordinate body so charged. If the charges are against the Local Union the trial shall be by the Executive Board of the Joint Council * * *. The provisions of this section shall also be applicable when the Executive Board of the subordinate body is charged or is the charging party."

We acknowledge the importance of adhering to the rule of exhaustion of intra-association remedies as a proper restraint upon judicial interference with the internal affairs of private associations.[4] The justification of the rule is not only that it enforces the contractual obligations created by the constitution and bylaws but also that it confines internal disputes to the system provided by the association, a policy which generally serves the best interests of the members, the association itself, and the administration of justice. Forcing disputants to avail

---

urged until the hearing on defendant's post-trial motions. As we read the court's helpful memorandum along with its ruling on the motion when it was urged for the first time that plaintiff was required to plead and prove exhaustion of remedies as a condition precedent, we believe the court also determined the issue on its merits to the effect that the rule should not be applied to defeat plaintiff's recovery under the circumstances. Since the fact is undisputed that plaintiff made no effort to seek association remedies, we prefer, as defendant urges, to consider the issue on the merits rather than limit our review, as plaintiff urges, to whether the court erred in refusing to permit defendant to amend its answer.

[4]See, Peters v. Minn. Dept. Ladies of G. A. R. 245 Minn. 563, 73 N. W. (2d) 621; DeWar v. Minneapolis Lodge No. 44 B. & P. O. E. 155 Minn. 98, 192 N. W. 358, 32 A. L. R. 1012.

themselves of a private system for settling private disputes cannot help but reduce litigation in the courts, or at least narrow the issues presented for adjudication.[5]

However, the purposes of the rule are not served when the remedies provided are inadequate even though the procedure for submitting grievances and for hearing by an association tribunal is available.[6] To require exhaustion in such cases would be to permit use of the rule as a defensive vehicle to avoid granting any relief to a member by adding delaying and expensive preliminary and inconclusive procedures. This would be a disservice to the aggrieved parties, a reflection on the association, and an abrogation of judicial responsibility. Where remedies are in fact not available to afford such relief, or where their availability is dependent upon a tortured or unjustified interpretation of the constitution or bylaws, it is rather uniformly held that the remedies are illusory and need not be exhausted.[7]

The provisions of the constitution of the parent body quoted above are the only provisions emphasized by the defendant as affording remedies to plaintiff within the union. While other provisions—not set out and not appearing in context with those quoted above—seeking to provide a fair hearing, a prompt decision, penalties for bringing charges in bad faith, and such like may also be applicable, we have searched the constitution in vain for any provisions which directly or by necessary implication empower the Joint Council, the General Executive Board, or the International Convention to award damages

---

[5]See, Rowan v. K. W. McKee, Inc. 262 Minn. 366, 114 N. W. (2d) 692; Comment, 65 Yale L. J. 369.

[6]Falsetti v. Local Union No. 2026, U. M. W. A. 400 Pa. 145, 161 A. (2d) 882, 87 A. L. R. (2d) 1082; Summers, *The Law of Union Discipline: What the Courts Do in Fact,* 70 Yale L. J. 175, 207; Note, 76 Harv. L. Rev. 983, 1069. See, also, Labor-Management Reporting and Disclosure Act of 1959, 73 Stat. 522, § 101(a)(4), 29 USCA, § 411(a)(4).

[7]Brown v. Harris County Medical Society (Tex. Civ. App.) 194 S. W. 1179; Marchitto v. Central R. Co. of N. J. 9 N. J. 456, 88 A. (2d) 851; People ex rel. Deverell v. Musical Mutual Protective Union, 118 N. Y. 101, 23 N. E. 129. See, Summers, *Legal Limitations on Union Discipline,* 64 Harv. L. Rev. 1049, 1086.

to a member whose employment has been wrongfully terminated. Specific provisions grant power to order a local union to reinstate a member or to levy a fine against such union. However, in the latter case, this fine, if levied against a local union, must be paid to the treasury of the Joint Council. Under the provisions for reinstatement, if the Joint Council or any appeal tribunal ordered plaintiff's reinstatement, such an order would be in direct conflict with the amendment to the local union's bylaws and also with Article XXI, § 3, of the constitution of International which provides in part:

"* * * No member while receiving severance or retirement benefits from the International Union shall be eligible to hold a salaried office or position in a Local Union * * *."

Thus, it is readily apparent that the intra-association remedies are neither reasonably designed nor likely to yield an award of damages to plaintiff for breach of contract, the only remedy prayed for and now available to plaintiff. Under this theory of the case and the applicable law, plaintiff's relief is limited to money damages for breach of contract of employment. Neither at trial nor here has defendant pointed to any association machinery that could grant such relief for the grievance claimed by plaintiff. Although disputed at trial, the parties now appear to concede that under the exhaustion rule the burden rested upon plaintiff to plead and prove that he had performed the contractual conditions precedent to asserting his claim in the courts.[8] Defendant's proposed amendment properly, under Rule 9.03, Rules of Civil Procedure, specifically denied that the plaintiff had exhausted his remedies. Where plaintiff's pleadings are inadequate, such an attempt at denial serves to point up the issue. The burden to prove performance of the condition precedent continues to rest on the plaintiff, but the policy underlying the rule would require defendant upon a claimed failure of proof to go forward with the evidence to demonstrate the remedies available and in what respect the plaintiff had failed to

---

[8]See, Rowan v. K. W. McKee, Inc. 262 Minn. 366, 114 N. W. (2d) 692; Kopke v. Ranney, 16 Wis. (2d) 369, 114 N. W. (2d) 485; Rule 9.03, Rules of Civil Procedure.

exhaust his administrative remedies.[9] This is especially necessary in a case such as this where the association is sued and peculiarly is in a more favorable position to come forward with the facts. The trial court's refusal to permit defendant to amend its answer did not preclude a full consideration of its claim of failure to exhaust internal remedies. The record thus reveals that such refusal did not prejudice defendant.

Based upon the foregoing and under the circumstances of this case, the trial court was correct in refusing to apply the rule of exhaustion of remedies to defeat plaintiff's recovery.

Affirmed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.

---

[9]See, Markowitz v. St. Mary's Ukrainian Orthodox Church, 88 Pa. D. & C. 472 (C. P. Lehigh Co.); People ex rel. Deverell v. Musical Mutual Protective Union, 118 N. Y. 101, 23 N. E. 129.