## ARNOLD L. PUTNAM v. GORDON JENSEN, INC., AND ANOTHER.

139 N. W. (2d) 266.

December 31, 1965—No. 39,679.

*Bergman & Knutson,* for appellant.

*Neville, Johnson & Thompson* and *Sigurd Ueland, Jr.,* for respondent employer.

*Sigal, Savelkoul, Cohen & Sween,* for respondent union.

FRANK T. GALLAGHER, C.

This is an appeal from a judgment of the district court entered pursuant to an order granting defendants' motion for summary judgment. Plaintiff, Arnold L. Putnam, had made a claim against his employer, defendant Gordon Jensen, Inc., and against his union, defendant Sheet Metal Workers International Association Local Union No. 34 for back wages in an amount equaling the difference between his actual salary and the union scale for a journeyman sheet metal worker.

Plaintiff had been working with sheet metal products since 1931. He testified, however, that he never had any vocational training in sheet metal work; that he had no apprenticeship training; that he had never been a registered apprentice in any occupation; and that he had never been licensed as a journeyman sheet metal worker. Since he began working with sheet metal products, his job involved primarily installation of kitchen equipment, including stoves, refrigerators, dishwashing units, and cafeteria counters. He never did ventilation or ductwork, nor did he ever do welding, grinding, or polishing, because this work was always subcontracted by his employer to sheet metal shops. Part of plaintiff's job while in the employ of Gordon Jensen, Inc., was to deliver to customers the equipment that had been fabricated in a subcontractor's shop and also to pack certain utensils which his employer handled.

In 1931 plaintiff began working for the firm of Josting & Schilling. As an employee there he was included with all of the employees of that firm when they became members of St. Paul Local 76 of the Sheet Metal Workers International Association. In 1945 plaintiff went to work for his brother-in-law, who was starting a business of selling sheet metal kitchen equipment. In about 1950 that business was purchased by Gordon Jensen, plaintiff's nephew, and plaintiff continued to work for the firm under its new name, Gordon Jensen, Inc. In about 1952 plaintiff transferred his union membership to defendant Minneapolis Local 34 of the

Sheet Metal Workers International Association. At all times after 1952, while working for defendant Gordon Jensen, Inc., and thereafter, plaintiff has been a member in good standing of defendant union.

The codefendants in this action have from time to time during plaintiff's employment entered into collective bargaining agreements covering journeymen sheet metal workers and registered apprentices.[1] The agreements provided for one and one-half times the regular rate of pay for certain overtime worked and double the regular rate of pay for certain other overtime worked. It appears that plaintiff was paid at the time and one-half rate for overtime but never received the double time rate. It also appears that he complained to his employer or its representative about his wage on occasion but nothing was done about it.

Prior to June 1958, the plaintiff was paid $2.25 per hour. On May 6, 1958, his son, on his own volition, wrote a letter to the defendant union protesting his father's wage rate, and as a result the union negotiated a pay increase for plaintiff, raising his salary to $2.75 per hour effective June 1958.

On March 4, 1963, plaintiff's son again wrote to defendant union and to Gordon Jensen protesting that his father was not receiving the union scale wage. As a result the union executive board met on March 12, 1963, and heard plaintiff's claim. On March 26, 1963, Gordon Jensen was called before the same executive board and questioned on the matter. After some further investigation the union on March 28, 1963, advised plaintiff by letter that it would not force defendant Gordon Jensen, Inc., to

---

[1] Under those agreements the wage rates during the period of plaintiff's employment for journeymen sheet metal workers were set as follows:

| | |
|---|---|
| From February 1, 1957, to May 1, 1957 | $3.275/hr. |
| From May 1, 1957, to May 1, 1958 | 3.375/hr. |
| From May 1, 1958, to May 1, 1959 | 3.525/hr. |
| From May 1, 1959, to Nov. 1, 1959 | 3.675/hr. |
| From Nov. 1, 1959, to May 1, 1960 | 3.72/hr. |
| From May 1, 1960, to Nov. 1, 1960 | 3.82/hr. |
| From Nov. 1, 1960, to June 1, 1961 | 3.89/hr. |
| From June 1, 1961, to Dec. 1, 1961 | 4.06/hr. |
| From Dec. 1, 1961, to April 1, 1962 | 4.10/hr. |
| From May 4, 1962, to April 30, 1964 | 4.29/hr. |

pay the difference in back wages but that it would require that company to pay union scale from that day forward. About 2 weeks after this letter was written, in April 1963, the plaintiff was discharged from his employment. Apparently this discharge was in keeping with earlier statements by Gordon Jensen that if he had to pay journeyman's scale wages he would fire plaintiff and hire a qualified journeyman sheet metal worker.

The Constitution and Ritual of the Sheet Metal Workers International Association provides in article 19, section 8:

"No local union, council, or officer or member thereof shall appeal to the Civil Courts for redress until after having exhausted all rights of appeal provided for in this Constitution."

The sections of article 19 in general provide for an appeal from decisions of the local organization to the General President of the association, and from his decision to the General Executive Council, and from that decision to the General Convention which meets every 4 years.

Plaintiff raises the following issues:

(1) Under the facts of this case, is the exhaustion of remedies within the union a condition precedent to his legal action?

(2) Do the facts here present a situation of accord and satisfaction?

■ The trial court indicated in its memorandum that one of the reasons for its decision was the fact that plaintiff had failed to exhaust his administrative remedies and had not shown that an adequate remedy would not have existed had he attempted to do so. Defendants take this same position. Plaintiff contends on the other hand that remedies are not in fact available through internal union procedures; that to seek such redress would be futile; that defendants have waived their right to insist on exhaustion of internal remedies; and that therefore to require it is unjustified.

There is little dispute about the general rule respecting civil litigation between a union and its member. It is simply that the member must exhaust the remedies provided by the union for internal disputes before a civil court will entertain the dispute. Rensch v. General Drivers, etc. Local No. 120, 268 Minn. 307, 129 N. W. (2d) 341; Rowan v. K. W. McKee, Inc. 262 Minn. 366, 114 N. W. (2d) 692; Local of H. and R.

Employees Union v. International Alliance, 212 Minn. 587, 4 N. W. (2d) 771; Skrivanek v. Brotherhood of L. F. & E. 198 Minn. 141, 269 N. W. 111; Annotation, 72 A. L. R. (2d) 1439; 19 Dunnell, Dig. (3 ed.) § 9674.

It is equally clear from the cases cited and others that there are several well-recognized exceptions to the general rule both in this state and in other jurisdictions. The exceptions to the general rule usually involve those situations in which it would be obviously unreasonable to require exhaustion of internal remedies because of excessive delay, futility of the internal appeal, or inability of the internal procedures to grant relief. See, Rensch v. General Drivers, etc. Local No. 120, *supra;* Rowan v. K. W. McKee, Inc. *supra;* Skrivanek v. Brotherhood of L. F. & E. *supra;* Dragwa v. Federal Labor Union, 136 N. J. Eq. 172, 41 A. (2d) 32; Miller v. Building Service Union, 28 Misc. (2d) 48, 211 N. Y. S. (2d) 459, 47 L.R.R.M. 2379; Annotation, 72 A. L. R. (2d) 1439; Summers, *Legal Limitations on Union Discipline,* 64 Harv. L. Rev. 1049, 1086.

Thus the question becomes whether the plaintiff in the instant case comes within one of the exceptions. The trial court concluded that there was no showing that the remedies of the internal procedure would not be adequate. This being a fact determination, this court will not reverse that finding unless the evidence taken as a whole furnishes no substantial support for it. Bjerketvedt v. Jacobson, 232 Minn. 152, 44 N. W. (2d) 775.

The procedure for appeals provided for by the union constitution is not disputed. The General President of the association has authority to hear de novo all appeals from the decisions of the local union. Appeals from the general president may apparently be taken to the General Executive Council and then to the General Convention which meets every 4 years. It is admitted that plaintiff did not attempt an appeal from the decision of the local board not to press his claim against his employer.

When defendants first moved for summary judgment, the motion was denied. The trial court apparently took the position at that time that the union did not go as far as it should have in processing the employee's claim through the various grievance procedures provided for in article 13 of its constitution, and as a result there could not be a true determination

of the employer's liability within the union procedures. The union having failed to press the claim, the court reasoned that plaintiff was entitled to a determination of his right in the courts, and that the position of the defendants that the plaintiff had not exhausted the remedies for internal disputes was not a bar to the action. Summary judgment was not granted at that time because of the existence of factual issues regarding the good faith of the union and plaintiff's employee status.

However, after the case had been more thoroughly briefed and argued, the court concluded that the plaintiff failed to exhaust his administrative remedies through the union and that there was no showing that an adequate remedy would not have existed within the union procedures. The court then reversed its position and granted summary judgment for defendants, saying that it had denied the earlier motion because it was premature. It cited Rensch v. General Drivers, etc. Local No. 120, *supra,* which had been decided in the interval since the trial court had denied summary judgment. The court further stated that when the union negotiated a settlement on behalf of plaintiff with his employer, which plaintiff accepted over a period of 6 years, there was an accord and satisfaction and that plaintiff was guilty of laches.

In the Rensch case we said that an adequate remedy must appear to exist before exhaustion will be required. There was no provision in the union constitution in that case which directly or by necessary implication empowered the joint council to award damages to a member whose employment had been wrongfully terminated. We concluded that the intra-association remedies were neither reasonably designed nor likely to yield an award of damages to plaintiff for breach of a contract, the only remedy prayed for and available to the plaintiff in that action. It is our opinion that a similar situation exists in the case at bar. Article 19 of the constitution provides for an appeal from the decision of the local organization to the General President, from his decision to the General Executive Council, and from that decision to the General Convention. However, we can find nothing in the constitutional provisions that would grant the relief asked for by the plaintiff here, namely, a money claim for back wages.

The union cites Skrivanek v. Brotherhood of L. F. & E. 198 Minn.

141, 269 N. W. 111, as controlling on this point. In that case the plaintiff sued defendant brotherhood to recover disability benefits. The brotherhood maintained a disability fund toward which members were required to pay dues in order to provide funds for the payment of monthly disability payments to the members who were permanently and totally disabled. We do not consider that case in point because it is apparent that there the brotherhood maintained a disability fund for the payment of monthly disability benefits, and if plaintiff had appealed from the decision of the union's secretary that plaintiff was not permanently and totally disabled, and if he had received a favorable decision on his appeal to the international president of the organization or on his appeal to the board of directors, then funds were available within the organization to pay his award. There is no showing that that was the situation in the instant case. It is, therefore, our opinion that the holding in the Rensch case with respect to the unavailability of the remedy within the union provisions would apply here, as it would be clearly futile to expect a money damage recovery from the union under the facts of this case, and thus the plaintiff was properly before the court for adjudication of his claim.

■ A further basis for granting the summary judgment was that the acceptance and cashing of the paychecks by plaintiff with knowledge that they constituted full payment for his work at less than the union scale amounted to an accord and satisfaction.

Plaintiff contends that to have a valid accord and satisfaction there must be an agreement to accept less than is due, which agreement he asserts was absent in the instant case. For purposes of discussion of this issue we must assume that the collective bargaining agreement between the defendants included the plaintiff and that he was entitled to union scale wages thereunder. Such an assumption may be in considerable dispute but it is consistent with the most favorable view of plaintiff's case and if it is not made there could be no issue of accord and satisfaction.

The law concerning accord and satisfaction has been recently clarified and settled in Minnesota by Winter Wolff & Co. v. Co-op Lead & Chemical Co. 261 Minn. 199, 111 N. W. (2d) 461. In that case, after discussing some of the uncertainty that had arisen around our previous decisions, we stated (261 Minn. 209, 111 N. W. [2d] 467):

"\* \* \* Where two parties in the position of debtor and creditor, having full knowledge of the facts and dealing fairly with each other, settle an account, even though it may be called a liquidated one, by the offer of one party to pay a definite amount and the acceptance of that offer by the other party, there is no logical or legal reason why they should not be permitted to do so.

"A creditor's retention of a check offered in full settlement of a liquidated debt by a debtor constitutes an acceptance of an offer to settle the indebtedness."

We also pointed out that the same rule clearly applies to the retention of a check if the indebtedness is unliquidated.

There can be little doubt that plaintiff in the case before us was aware of all of the essential facts. He was aware that the weekly paycheck was offered in full payment for his services and accepted the amount as such. Plaintiff contends that his expressions of dissatisfaction while accepting the checks constituted behavior which negated an acceptance in full payment. It is settled, however, that such objections will not avail the plaintiff who has continually accepted such checks over a long period of time. Oien v. St. Paul City Ry. Co. 198 Minn. 363, 270 N. W. 1.

Accordingly we hold that Winter Wolff & Co. v. Co-op Lead & Chemical Co. *supra,* controls here and that the acceptance and cashing of the paychecks with knowledge that they were offered in full payment did constitute an accord and satisfaction. The trial court was justified in granting a summary judgment on that basis.

Affirmed.