MEMORANDUM OPINION AND ORDER
DIANA E. MURPHY, Chief Judge.
Plaintiffs Fireman’s Fund Insurance Company, Liberty Mutual Insurance Company, and the Traveler’s Insurance Company (Plaintiffs) brought this action for indemnity against the named insurance company defendants[1] to pay their shares of a $34 million dollar settlement of an earlier antitrust action where six Minnesota employers sued plaintiffs and the Workers’ Compensation Insurance Rating Association of Minnesota (WCIRAM). Now before the court are the defendants’ individual motions to dismiss and the cross motions for summary judgment of plaintiffs and defendants Milwaukee[2] and Northwestern National[3].
I.
In 1983, six Minnesota employers brought antitrust claims against fourteen workers’ compensation insurance companies and the Workers’ Compensation Insurance Rating Association of Minnesota (WCIRAM).[4] The basic allegation was that during 1979-1983 the fourteen companies and WCIRAM had engaged in illegal restraint of trade and acts or agreement to engage in boycott, intimidation or coercion. The antitrust plaintiffs claimed that the defendant insurers conspired to prevent a downward movement in workers’ compensation rates by agreeing to expel insurers from WCIRAM who lowered their rates.
WCIRAM was an unincorporated, nonprofit association created by statute and begun in 1921 to act as an independent rating bureau for workers’ compensation insurers in Minnesota. Prior to 1979, its major function was to collect data from its members and petition the Commissioner of Insurance for rates on behalf of all carriers. The Commissioner would then set mandatory rates for all carriers. In 1979, the legislature amended the workers’ compensation laws, and the rates established by the Commissioner represented only the maximum rates insurers were allowed to charge. Insurers could deviate below them.
Up until January 1, 1984, all carriers were required by law to be members of WCIRAM in order to write workers’ compensation in Minnesota. WCIRAM’s articles of association provided for an assessment of members for the operating expenses of the organization, prorated based on their annual workers’ *1364 compensation premiums in Minnesota. The articles also contained an indemnification provision for lawsuits against insurers acting as directors, officers or committee members, or because of their membership in the association.
WCIRAM’s enabling legislation was repealed effective January 1, 1984. In place of WCIRAM there were to be one or more Data Service Organizations (DSOs). All insurers were required to belong to a DSO which would publish advisory rates. The statute specifically designated WCIRAM as a DSO.
In late 1983, the WCIRAM Board of Directors approved a plan to incorporate as a DSO entitled Minnesota Workers’ Compensation Insurers Association, Inc. (MWCIA). The plan was subsequently approved by the WCIRAM membership through a subscription agreement that included proposed articles and by-laws. As a result, MWCIA began operating with the same office staff and employees as WCIRAM on January 1, 1984. The MWCIA Board of Directors resolved to take “all actions to complete the obligations of [WCIRAM].” There were no other resolutions or other actions taken by either WCI-RAM or MWCIA to transfer any liabilities WCIRAM may have had to MWCIA.
The antitrust action was filed in April, 1983. It sought over $100 million in damages before trebling.[5] When the suit began, defendants had the choice of being represented by WCIRAM’s counsel, Thomas Harms, or retaining individual counsel. The WCIRAM Board later agreed to reimburse insurance company defendants for litigation expenses and the costs of individual counsel. Defendants claim the membership was not informed of this decision until the fall of 1989.
In July 1987, U.S. District Judge James M. Rosenbaum, granted the anti-trust defendants’ summary judgment on the grounds that the McCarran-Ferguson antitrust exception applied and that there was no evidence of boycott, coercion or intimidation to enforce insurance rates set by WCIRAM.[6] The Court of Appeals reversed in part and remanded.[7] It upheld the trial court’s determination that the McCarran-Ferguson exception applied, but reversed the grant of summary judgment and remanded because it determined there was sufficient evidence to create genuine issues of fact as to whether the defendants agreed to an illegal boycott. Following remand, the antitrust plaintiffs filed a motion for class certification. While that motion was pending, counsel contacted all insurer members of WCIRAM from 1979 to 1983 who had not been previously sued. The letter provided a summary of the litigation, a description of the early settlements reached with some of the defendants, and an outline for acceptable settlement offers. Between March and August of 1989, the antitrust plaintiffs settled with a number of the defendants.
Because some of the members of the MWCIA Board of Directors were representatives of the named defendants in the antitrust suit, the Board decided that separate counsel should be obtained for MWCIA. Richard Primuth was retained for this purpose. He recommended that an independent committee be appointed to be responsible for the conduct of the litigation, and such a committee was formed by action of the MWCIA Board.[8]
On the eve of trial in late December 1990, the remaining antitrust defendants (plaintiffs in this action plus the Home Insurance Company) reached a global settlement with the antitrust plaintiffs for $34 million. It was a condition of this settlement that the three *1365 defendant companies be indemnified by their fellow WCIRAM members on a fair basis. The Independent Committee appointed by the MWCIA Board agreed to this provision and to the $34 million amount.[9] The antitrust parties agreed that the settlement released all defendants including WCIRAM and its members, as well as MWCIA and its members. Plaintiffs in this action forwarded the settlement money to the antitrust plaintiffs and then sought repayment from the other former WCIRAM members.
The three remaining antitrust defendants [10] and the Independent Committee entered into a Memorandum of Understanding (MOU) regarding the repayment assessments. The memorandum stated that:
1) the $34 million settlement would be spread among those solvent insurance companies that were members of WCI-RAM from June 1979 to December 1983 in accordance with their respective market shares during that period;
2) to the extent that the WCIRAM members timely paid their assessments, the settling defendants agreed not to sue them for any of the costs and expenses of the litigation, including legal fees (totaling approximately $11.5 million);
3) if a member failed to pay its assessment in a timely fashion, the remaining defendants were free to sue them for any and all claims including costs and legal fees; and
4) the Committee or MWCIA would cooperate in any collection action and execute such assignments or other documents as necessary to allow the remaining defendants to enforce their rights.
On August 16,1991 the Independent Committee assessed 97 insurers or insurer groups that were WCIRAM members during the relevant period as set forth in the MOU. Companies that did not pay the assessments by October 16, 1991, became subject to suit for their share of the assessments and attorneys fees and costs of the litigation. Over 83% of the companies paid their assessments by the October 16, 1991 date. To date, 93 out of 97 members have paid their assessments and been released. The only solvent companies that have not paid are the defendants here.
II.
Defendants move to dismiss the complaint under Fed.R.Civ.P. 12(b)(6). Northwestern National filed an alternative motion for summary judgment on similar grounds.[11] Defendants argue there are no issues of material facts relating to the grounds they have asserted for summary judgment or dismissal.
Defendants contend there is no basis for asserting a claim of indemnity against them. First, defendants argue there is no federal statutory or common law right to contribution or indemnity against alleged joint tort-feasors in antitrust cases. Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981). Defendants also argue that there can be no contractual claim for indemnity in this case.
Defendants argue that such contracts for indemnity are void for public policy reasons. They argue the public policy behind Texas Industries is that the deterrence of treble damages in antitrust cases would be frustrated if claims for indemnity and contribution were allowed. Indemnification of these plaintiffs for their settlement of antitrust claims would violate that policy. Any agreement of this sort should not be enforced because the law will not provide a remedy to an illegal contract.
*1366 Defendants also argue the indemnification provision is unenforceable because any obligation created by the articles was extinguished when WCIRAM was replaced by DSOs after repeal of WCIRAM’s enabling statute, because WCIRAM was merely a creature of statute.
Plaintiffs respond that it is irrelevant that there is no statutory or common law right to contribution or indemnification because their claim is contractual. Each defendant was a member of WCIRAM during the period 1979-1983, and WCIRAM Article XVI unambiguously provides for indemnification for amounts paid in settlement, including attorney fees, where the basis of the litigation is that the insurance company is a member of WCIRAM. Plaintiffs contend the articles and by-laws of an unincorporated association form a contract between and among the members of the association. Each of the defendants agreed to the articles and by-laws of WCIRAM and is bound by them.
Plaintiffs further argue that this obligation to indemnify arose before WCIRAM’s enabling statute was repealed. They contend that under the savings statute, Minn.Stat. § 645.35, rights accruing under a contract before repeal of a law permitting such a contract are enforceable. Here it is undisputed that defendants approved WCIRAM’s articles and by-laws before the enabling statute was repealed. In addition, the WCIRAM Board passed a resolution to pay attorney fees in the litigation before the enabling statute was repealed.
Where, as here, the parties on a motion to dismiss under Fed.R.Civ.P. 12(b)(6) submit matters outside the pleadings, the motion is properly treated as one for summary judgment under Fed.R.Civ.P. 56. Fed.R.Civ.P. 12(b); Court v. Hall County, 725 F.2d 1170 (8th Cir.1984). Both sides have submitted affidavits in support of their arguments, so the court views defendants’ motions to dismiss in light of the familiar summary judgment standard.[12] Defendants have not shown that the complaint fails to state a claim or that they are entitled to judgment as a matter of law, and the motions should be denied.
Plaintiffs concede they are not asserting a federal statutory or common law right to contribution or indemnity, so that issue is not before the court. Defendants’ argument that Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981), bars plaintiffs’ indemnification claim also misses the mark. While the Court there concluded that no statutory or common law right of contribution exists, it did not hold that such a right would violate the antitrust laws. Id. at 646, 101 S.Ct. at 2069-70.
In declining to provide a right to contribution, we neither reject the validity of those arguments [in support of contribution] nor adopt the views of those opposing contribution. Rather, we recognize that, regardless of the merits of the conflicting arguments, this is a matter for Congress, not the courts, to resolve.

Id.

Defendants also argue the indemnification provision is unenforceable because of the repeal of WCIRAM’s enabling statute and its failure to meet the requirements necessary to operate as a DSO. The indemnification obligation created by the articles was entered into before the statute was repealed, however. Articles and by-laws of an association create a contractual relationship between the members. Rensch v. General Drivers, Helpers & Truck Terminal Employees, 268 Minn. 307, 129 N.W.2d 341, 343 (1964). Minnesota’s savings statute preserves rights that accrue before the repeal of a statute associated with those rights. Minn. Stat. § 645.35. The indemnification obli *1367 gation previously entered into by the signing of the articles therefore survived. Even if this were not the ease, the new legislation creating the DSOs specifically continued WCIRAM as a DSO. See, Minn.Stat. § 79.52 subd. 3. WCIRAM members unanimously voted to operate as a DSO by incorporating as MWCIA and transferring all assets to the new corporation. It is undisputed that MWCIA met all the requirements of a DSO.
Defendants have not shown that the indemnification provision cannot legally be applied to antitrust claims, or that the rights under it were extinguished by statutory repeal or noncompliance. Their motions to dismiss under Rule 12(b)(6) should be denied.
III.
Milwaukee also moves individually for summary judgment on the basis that it was not provided proper notice of the settlement and assessment process. It argues that notification and other provisions relating to actions of the WCIRAM Board were not followed in making the assessments to WCI-RAM members, and that it is therefore not obligated to pay any part of the settlement. It contends that if the Independent Committee was acting in the place of the WCIRAM Board, it was required to follow the requirements of the WCIRAM articles and by-laws that required the Board to notify the members before taking such extraordinary action as paying litigation fees for individual members.
Plaintiffs respond that under the articles of both WCIRAM and MWCIA, committees do not have the same notification requirements as the Board. The court agrees. Under the Minnesota Nonprofit Corporation Act, Minn. Stat. Ch. 317A, which is incorporated into MWCIA’s articles, the MWCIA Board has the power to appoint committees. Under this authority the Board created the Independent Committee by resolution on January 23, 1990. The resolution did not require the committee to follow the WCIRAM articles, and even if it did, the WCIRAM articles do not require committees to follow the same notification procedures as the Board. See e.g., WCIRAM Article XIII (Kleinberg Affidavit Exhibit A).[13]
Milwaukee has not shown that the notification procedures of the WCIRAM articles applied to the Independent Committee, or that it was somehow prejudiced by the delay in notice, and its individual motion for summary judgment should be denied.
IV.
Plaintiffs also move for summary judgment. They argue that in February 1984, the MWCIA Board assumed the obligations of WCIRAM, including the obligation to indemnify and administer WCIRAM defense in the antitrust matter, by further resolution of the MWCIA Board, the Independent Committee was empowered to act as the Board of Directors of WCIRAM with regard to all matters related to the antitrust litigation. This included the ability to assess former WCIRAM members for costs of operation and to apportion indemnification. Plaintiffs argue that 93 out of 97 solvent members have paid their assessments and been released. Only these defendants remain.
As for the individual defendants, plaintiffs argue Western National named one of its highest executives, Eugene Miller, to serve on the Independent Committee. Miller voted in favor of assessing the other insurers. Western National also had paid its apportioned assessment of the WCIRAM litigation expenses and accepted a refund when members’ assessments were adjusted according to the market share each had during the relevant period. Northwestern National served on the Advisory Group of non-defendants which worked with the Independent Committee, and was therefore informed about the litigation and the implications of the Independent Committee’s decision to make an assessment. Finally, plaintiffs argue that Milwaukee is liable even if it did not receive notice of the litigation until 1991, because it suffered no prejudice from any lack of notice.
Defendants respond that Article XVI is unduly vague in its coverage because it does not expressly include antitrust liability. *1368 Article XVI, however, covers the type of liability involved in the litigation. It states that indemnification will be provided to:
Any person or insurer made or threatened to be made a party to any action, suit or proceeding, because such person or insurer was a member, or served on a committee or was an officer or employee of [WCI-RAM],
Article XVI ¶ 1. Broad grants of indemnity such as this are necessary to encourage participation in industry organizations. Its coverage applies to all suits related to the individual’s or organization’s membership or service in WCIRAM that does not fall into an enumerated exception.
Defendants also argue that there are issues of material fact that make summary judgment in favor of plaintiffs inappropriate, but they did not specify in their briefs what such fact issues might be. Counsel did make oral reference to several areas at the hearing, however, and the court has reviewed the hearing transcript in order to give every consideration to defendants’ position. Four areas were mentioned orally: 1) whether WCIRAM survived repeal of its statute so that plaintiffs have standing to bring the present action; 2) whether MWCIA assumed responsibility of WCIRAM’s obligations; 3) whether the indemnification exception for willful misconduct applies because the antitrust suit was based on individual misconduct by the named parties; and 4) unspecified fact issues related to a breach of fiduciary duty defense defendants say they will raise if the instant motions are denied.
Two of these points are not fact issues at all. Whether WCIRAM survived the conversion to DSOs, and whether MWCIA effectively assumed the obligations of WCI-RAM, are legal issues previously rejected in the discussion of defendants’ motions to dismiss. Possible factual issues relating to a future defense to be based on breach of fiduciary duties appear purely speculative. Defendants have not elaborated on the nature of the fiduciary relationship or articulated what duties were breached or what specific fact issues would exist for trial. Defendants have not filed a proposed answer containing this defense or shown what it would involve, and they have not requested a continuance of plaintiffs’ summary judgment motion under Rule 56(f). Under the circumstances, mention of this possible defense is not enough to withstand plaintiffs’ motion.
Finally, defendants claim there is a fact question as to whether the willful misconduct exception in Article XVI applies. At the hearing defendants suggested that the record needs to be developed as to whether the antitrust defendants were motivated to settle that case because the decision of the Court of Appeals led them to believe they would ultimately be found guilty of individual misconduct.
The “mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). The non-moving party must present specific evidence to establish that there are material facts in dispute creating a genuine issue for trial. Celotex Corp. v. Catrell, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).
The willful misconduct exception in WCI-RAM Articles specifically states indemnification will be provided:
except in relation to matters to which he or it shall be adjudged in such action, suit or proceeding to be liable by reason of willful misconduct ...
Article XVI ¶ 1 (emphasis added). It goes on to state:
The termination of any such civil or criminal action, suit or proceeding by judgment, settlement, conviction, or upon a plea of nolo contendere, or its equivalent, shall not in itself create a presumption that any such person or insurer was liable by reason of willful misconduct or that he or it had reasonable cause to believe that his or its conduct was unlawful.

Id.

It has never been adjudged that the antitrust plaintiffs were liable by reason of willful misconduct.[14] The Court of Appeals merely *1369 held there was sufficient evidence to create issues of fact as to whether the antitrust defendants agreed to an illegal boycott. In Re Workers’ Compensation Insurance Litigation, 867 F.2d at 1561. Even if discovery turned up evidence that fear of an adverse judgment was a factor in the antitrust defendants’ decision to settle, that would not be enough to fit within the willful misconduct exception. The clear language of the exception requires an adjudication of liability for willful misconduct in the underlying litigation. That did not happen. Moreover, experience teaches that there are many reasons for entering into settlements. Vague hopes for what discovery might produce are not enough to defeat summary judgment. Celotex Corp. v. Catrell, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Defendants have not shown that there is a genuine issue of fact over the applicability of the willful misconduct exception.
For all the reasons. discussed, plaintiffs’ motion for summary judgment should be granted.
ORDER
Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:
1) defendants’ motions to dismiss or for summary judgment are denied;
2) plaintiffs’ motion for summary judgment is granted, and judgment shall be entered in their favor against defendants.
LET JUDGMENT BE ENTERED ACCORDINGLY.

. Western National Mutual Group, Western National Assurance Co., Western National Mutual Insurance Co., Compass Insurance Co., Northwestern National Casualty Co., Northwestern National Insurance Co. of Milwaukee, Midland Mutual Insurance Co., Milwaukee Guardian Insurance Co., and Milwaukee Mutual Insurance Company.

. The following defendants are referred to collectively as "Milwaukee": Midland Union Mutual Insurance Company (merged into Milwaukee Mutual Insurance Company on January 1, 1981), Milwaukee Guardian Insurance, Inc., and Milwaukee Mutual Insurance Co. Milwaukee Insurance Group has been dismissed by stipulation of the parties.

. "Northwestern National” collectively refers to the following: Compass Insurance Co., Northwestern National Casualty Co., and Northwestern National Insurance Co. of Milwaukee. Northwestern National Group has been dismissed by stipulation of the parties.
“Western National" collectively refers to Western National Mutual Group, Western National Assurance Co., and Western National Mutual Insurance Company.

. The three plaintiffs in the present action were named defendants in the antitrust action. None of the defendants in the present action were named defendants in the antitrust case, but all were members of WCIRAM which was named as a defendant.

. Some of the correspondence in the record indicates- that possible damages after trebling had been estimated to be as high as $2 billion.

. In re Workers’ Compensation Insurance Antitrust Litigation, No. 4-45-1166 (D.Minn.1987).

. In Re: Workers’ Compensation Insurance Antitrust Litigation, 867 F.2d 1552 (8th Cir.1989).

. The Independent Committee members were: Andrew C. Meuwissen, formerly President of State Fund Mutual Insurance; Eugene Miller, Executive Vice President, Western National Mutual Insurance Co.; Thomas E. Kauper, Professor of Law, University of Michigan Law School and former Assistant Attorney General, Antitrust Division, U.S. Department of Justice; John H. Filer, former Chairman and CEO of Aetna Life & Casualty; David A. Bowers, Senior Vice President, Zurich American Insurance Group; and Spencer A. Broughton, Chairman and CEO of Citizens Security Group, Inc.

.Eugene Miller, Executive Vice President of Western National (a defendant in this action) was a member of the Independent Committee and voted in favor of the settlement plan and assessment procedure. He now states by affidavit that he was personally against settlement although he voted in favor because he was told a unanimous vote was important.
Some weeks before the vote the Independent Committee had passed a resolution stating that actions of the committee "represent the collective judgement of the Committee members as individuals, not as representatives of any insur-anee company” with which they may be affiliated. Miller Affidavit Exhibit A.

. Before the assessments began, Home Insurance assigned all its rights to the final three defendants (plaintiffs here).

. Milwaukee filed an individual summary judgment motion on the grounds that it did not receive proper notice of the settlement and assessment. That motion is discussed separately in section III, infra.

. On a motion for summary judgement, all material facts and inferences are construed in favor of the non-moving party. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir.1987). The moving party must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law.” Fed.R.Civ.P. 56(c). A fact is material if it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986). To defeat a motion for summary judgement, the non-moving party must present specific evidence to establish that there are material facts in dispute creating a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).

. The articles also set forth different quorum requirements for committees. See, WCIRAM Ar-tide VIII (Kleinberg Affidavit Exhibit A).

. Plaintiffs assert that the inclusion of the named defendants in the antitrust case related to their membership in WCIRAM, and that WCI-RAM was the target defendant. See e.g., Letter from Wood Foster, Esq., dated September 27, *1369 1989 at 2-3 (attached as Exhibit 10 to Martin Affidavit).