438 S.E.2d 564
190 W.Va. 384

**Lowell SATTERFIELD, Plaintiff Below, Appellee,**

v.

**Eugene CLAYPOLE, Marion Russell, Gary Jordan, James Rowan, James Slusser, Jerry Miller, John Darcus, and Rick Yanero, Individually and as Representatives and Officials of U.M.W.A. District 31, an Unincorporated Labor Association, and U.M.W.A. District 31, Defendants Below,**

**U.M.W.A. District 31, Appellant.**

**No. 21585.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 2, 1993.

Decided Dec. 9, 1993.

Jacques R. Williams, Hamstead, Hamstead & Williams, Morgantown, for appellee.

Peter F. Dinardi, Morgantown, for appellant.

BROTHERTON, Justice:

This appeal involves an alleged breach of employment contract claim by the appellee, Lowell Satterfield, against the officials of United Mine Workers of America District No. 31. Satterfield alleges that the union wrongfully laid him off from his position as assistant compensation director twice during his tenure as an elected official of the district union. Following a jury trial, the appellee was awarded $50,000.00. The union appeals, arguing that the Marion County Circuit Court erred in failing to rule on whether an employment contract existed and in ruling that federal labor law did not preempt state law. The circuit court denied post-trial motions to this effect by order dated July 6, 1992.

In 1985, Satterfield was elected to the position of assistant compensation director for the local office of District 31 of the United Mine Workers of America, a position created by the terms of the district's constitution. His term of office began on June 20, 1985. During the time that he was elected and took office, District 31 was under their third Constitution. Under its provisions, the assistant compensation director was a mandatory position, since the Constitution used the term "shall" when stating that the office of assistant compensation director should be elected by a plurality of the vote. His term of office was four years. The assistant compensation director was also a member of the board of directors.

On September 19, 1985, the fourth Constitution came into effect. In that Constitution, a lay-off procedure for Board members was established in order to reduce costs. Satterfield voted in favor of the lay-off procedure, which was to be done on basis of seniority, although he now attempts to excuse his vote by explaining he did not have advice of counsel when voting. On January 1, 1987, Satterfield was laid off, until March 9, 1987. He was laid off again from November 28, 1987, through June 20, 1989, when his term of office expired.

■ In its principal assignment of error, the appellant contends that federal law should have preempted state law because of the labor issues involved. We agree. Section 301 of the Labor Management Relations Act (LMRA) establishes federal jurisdiction for "suits for violation of contracts ... between any ... labor organizations (representing employees in an industry affecting commerce as defined in this chapter)." 29 U.S.C. § 185(a) [29 U.S.C.S. § 185(a)]. The U.S. Supreme Court has held that "a union constitution can be 'a contract between labor organizations' within the meaning of Section 301(a)" (of the Labor Management Relations Act/Taft–Hartley Act). *United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL–CIO v. Local 334, United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada*, 452 U.S. 615, 620, 101 S.Ct. 2546, 2549, 69 L.Ed.2d 280 (1981).

*Plumbers & Pipefitters* involved a suit, removed to the federal district court, by a local union against its parent international union to enjoin enforcement of an order requiring the locals to be consolidated as a violation of the international constitution. The court ruled in favor of the international union. The Third Circuit Court of Appeals, raising the issue *sua sponte*, held that the federal district court lacked jurisdiction because there would not be sufficient impact on labor-management relations or industrial peace. The Supreme Court reversed, stating that prevailing state law viewed union constitutions as contracts. *Id.* at 621, 101 S.Ct. at 2550. *See Machinists v. Gonzales*, 356 U.S. 617, 618–19, 78 S.Ct. 923, 924, 2 L.Ed.2d 1018 (1958). The Court held that because union constitutions are "contract[s]" within the plain meaning of § 301(a), and the local and international unions are "labor organizations," the federal district court had jurisdiction under § 301(a) of the LMRA. *Plumbers & Pipefitters*, 452 U.S. at 627, 101 S.Ct. at 2553.

In particular, the Supreme Court in *Plumbers & Pipefitters* pointed out that the prevailing state law view that a union constitution was a contract between parent and local unions was "widely held in the States around the time § 301(a) was enacted." *Id.* at 621, 101 S.Ct. at 2550. (citations omitted). The Court explained that view:

Congress was also concerned that unions be made legally accountable for agreements into which they entered among themselves, an objective that itself would further stability among labor organizations. Therefore, Section 301(a) provided *federal* jurisdiction for enforcement of contracts made by labor organizations to counteract jurisdictional defects in many state courts that made it difficult or impossible to bring suits against labor organizations by reason of their status as unincorporated associations. *See Charles Dowd Box Company v. Courtney, supra,* [368 U.S. 502] at 510, 7 L.Ed.2d 483, 82 S.Ct. 519 [at 524] 93 Cong.Rec. 5014 (1947) (comments of Sen. Ball, a floor leader of the bill). . . . Surely Congress could conclude that the enforcement of the terms of union constitutions—documents that prescribe the legal relationship and the rights and obligations between the parent and affiliated locals—would contribute to the achievement of labor stability. Since union constitutions were probably the most commonplace form of contract between labor organizations when the Taft–Hartley Act was enacted (and probably still are today), and Congress was obviously familiar with their existence and importance, *we cannot believe that Congress would have used the unqualified term "contract" without intending to encompass that category of contracts represented by union constitutions.* Nothing in the language and legislative history of Section 301(a) suggests any special qualification or limitation on its reach, and we decline to interpose one ourselves.

*Id.* 452 U.S. at 624–25, 101 S.Ct. at 2551–52 (emphasis added).

■ However, both the respondents in *Plumbers & Pipefitters* and in this case argue that § 301(a) jurisdiction was never intended to extend to disputes arising under union constitutions because, as stated in *Plumbers & Pipefitters,* "the 80th Congress clearly did not intend to intervene in the internal affairs of labor unions." *Id.* 452 U.S. at 625, 101 S.Ct. at 2552. The Court in *Plumbers & Pipefitters* disagreed, stating that "the respondent's argument falls wide of the mark. There is an obvious and important difference between substantive regulation by the National Labor Relations Board of internal union governance of its membership, and enforcement by the federal courts of freely entered into agreements between separate labor organizations." *Id.* at 626, 101 S.Ct. at 2552. The Court concluded that "it is far too late in the day to deny that Congress intended the federal courts to enjoy a wide-ranging authority to enforce labor contracts under § 301. We do not need to say that every contract imaginable between labor organizations is within § 301(a). It is enough to hold, as we do now, that union constitutions are." *Id.* at 627, 101 S.Ct. at 2553.

Although *Plumbers & Pipefitters* determined that union constitutions were within the scope of § 301(a), the court refused to decide whether "individual union members may bring suit on a union constitution against a labor organization." *Id.* at 627, n. 16, 101 S.Ct. at 2553, n. 16. Thus, we next address the question of whether federal law would preempt under § 301(a) when a union member sues the local or district under its union constitution.

The United States Supreme Court discussed this issue in *Wooddell v. International Brotherhood of Electrical Workers, Local 71, et al.,* 502 U.S. 93, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991). *Wooddell* involved a union member's suit against the local and its officers, based upon both the local and international constitutions, in District Court, seeking injunctive relief, lost wages, benefits, additional compensatory damages, punitive damages, and attorney fees. The District Court dismissed all claims against the defendants on a summary judgment motion. The United States Court of Appeals for the Sixth Circuit reversed the dismissal of one claim, but otherwise affirmed the district court's dismissals. The Sixth Circuit stated, among

other holdings, that § 301(a) did not authorize an action to be brought by an individual union member. On certiorari, the United States Supreme Court reversed and held that the federal district court had subject matter jurisdiction under the "between labor organizations" provision of § 301(a), 29 U.S.C. § 185(a). Section 301(a) provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between *any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties....*" 29 U.S.C. § 185(a) (emphasis added).

In *Smith v. Evening News Association,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), the Court defined "the word 'between' in § 301" to refer to " 'contracts,' not 'suits'...." *Id.* at 200–01, 83 S.Ct. at 270. Thus, the Court in *Wooddell* determined that:

> [A] suit properly brought under § 301 must be a suit either for violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce or for a violation of a contract between such labor organizations. No employer-union contract is involved here; if the District Court had § 301 subject-matter jurisdiction over petitioner's suit against his union, it is because his suit alleges a violation of a contract between the two unions, and because § 301 is not limited to suits brought by a party to that contract, i.e., because one in petitioner's position may properly bring such a suit.

*Id.,* 502 U.S. at ——, 112 S.Ct. at 498, 116 L.Ed.2d at 428.

In reaching its conclusion, the *Wooddell* Court reviewed *Plumbers & Pipefitters, supra,* and found that federal jurisdiction existed when the suit by the local union was for a violation of a contract between two unions within the meaning of § 301. *Id.,* 502 U.S. at ——, 112 S.Ct. at 499, 116 L.Ed.2d at 429.

The Court also examined its decision in *Smith v. Evening News, supra,* wherein it concluded that an employee's suit against his employer to enforce a collective bargaining contract between the employer and the union collective bargaining agent was one provided for in § 301. Quoting the reasoning set forth in *Smith v. Evening News,* the *Wooddell* Court noted that a contrary ruling could result in the possibility that:

> "individual contract terms might have different meanings under state and federal law [which] would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Id.,* [371 U.S.] at 200–201, 9 L.Ed.2d 246, 83 S.Ct. 267, quoting *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103, 7 L.Ed.2d 593, 82 S.Ct. 571 [576] (1962). Similar considerations bear on this case. Congress expressly provided in § 301(a) for federal jurisdiction over contracts between an employer and a labor organization *or between labor organizations.* Collective-bargaining agreements are the principal form of contract between an employer and a labor organization. Individual union members, who are often the beneficiaries of provisions of collective bargaining agreements, may bring suits on these contracts under § 301. *Likewise, union constitutions are an important form of contract between labor organizations. Members of a collective-bargaining unit are often the beneficiaries of such interunion contracts, and when they are, they likewise may bring suit on these contracts under § 301.*

If they could not, unacceptable consequences could ensue.... Respondents contend that construing § 301 as we do signals an unwarranted intrusion on state contract law that Congress could not have intended. It is argued that the federalization of the law of union-member relationships should be limited to the specific provisions found in the L.M.R.D.A.[1] But if § 301, fairly construed and absent a later statute such as the L.M.R.D.A., covers the

---

1. Labor Management Reporting & Disclosure Act of 1959, 73 Stat. 519, as amended, 29 U.S.C.

§ 401 et seq.)

suit we now have before us, we should reach that result even with the appearance of a later statute such as the L.M.R.D.A. unless there is some more persuasive reason derived from the later legislation itself that Congress intended to narrow the reach of § 301. We are unable to discern any satisfactory basis for implying such a partial repeal of that section.

*Id.*, 502 U.S. at ——, 112 S.Ct. at 500, 116 L.Ed.2d at 430 (emphasis added).

The *Wooddell* Court refused to decide the merits of the breach of contract claim after concluding that federal jurisdiction existed under § 301, based on the alleged violation of the constitution between the local and international labor organizations. Thus, *Wooddell* goes a step further than *Plumbers & Pipefitters*, and holds that § 301(a) controls ·when a union member brings suit against either the local or international union based upon the international and the local constitutions, since constitutions are considered contracts between two labor organizations for the purposes of § 301. *Id.*, 502 U.S. at ——, 112 S.Ct. at 500, 116 L.Ed.2d at 430.

*Wooddell* did not specially address whether federal law would preempt state law when a union member sued the local or district based solely on the local or district constitution. It did, however, cite with approval several United States Court of Appeals opinions in which federal law was held to preempt in similar circumstances.

> The interpretation [of § 301(a)] we adopt today has been the law in a number of Federal Circuits for some time and was adopted ten years ago by the Court of Appeals for the Ninth Circuit in a case specifically involving the IBEW constitution. *See Kinney v. International Brotherhood ·of Electrical Workers*, 669 F.2d 1222 (1981); *see also, e.g., DeSantiago v. Laborers International Union of North America, Local No. 1140*, 914 F.2d 125 (CA8 1990); *Pruitt v. Carpenters' Local Union No. 225*, 893 F.2d 1216 (CA11 1990); *Lewis v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, Local Union No. 771*, 826 F.2d 1310 (CA3 1987).

*Id.*, 502 U.S. at ——, 112 S.Ct. at 500, 116 L.Ed.2d at 430–31.

A review of the Court of Appeals' opinions cited in *Wooddell* illustrates that suits brought by a union member under the local or district constitution have been considered preempted by federal law in several jurisdictions. In *Kinney v. International Brotherhood of Electrical Workers*, 669 F.2d 1222 (9th Cir.1981), the Ninth Circuit held that, under § 185(a) of the Labor Management Relations Act, 29 U.S.C.A., "[a]n individual union member may bring suit on a union constitution against a labor organization." *Id.* at 1229. In *Pruitt v. Carpenter's Local Union No. 225*, 893 F.2d 1216 (11th Cir. 1990), the Eleventh Circuit Court of Appeals addressed a situation in which a suit was brought by a union member/candidate for local office against the union when the position to which he had been elected was eliminated. The Court of Appeals held that:

> [t]he court believes that the appellant's cause of action is completely pre-empted. By its terms, section 301 provides that "[s]uits for violations of contracts between an employer and a labor organization ... or between any such labor organization may be brought in the district court of the United States." The term "contracts" includes union constitutions, *see United Association of Journeymen & Apprentices v. Local 334*, 452 U.S. 615, 619–20, 101 S.Ct. 2546, 2548–49, 69 L.Ed.2d 280 (1981), and the phrase "[s]uits for violations of contracts" includes suits by employees for violations of union constitutions. *See, e.g., Alexander v. International Union of Operating Engineers*, 624 F.2d 1235 (5th Cir. 1980) (employees sue union under section 301 when union enters into unwanted agreement); *cf. Franchise Tax Board [v. Construction Laborers Vacation Trust]*, 463 U.S. [1] at 25 n. 28 [103 S.Ct. 2841, 2854 n. 28, 77 L.Ed.2d 420] (Court ha[s] not taken a restrictive view of *who* may sue under § 301 for violations of such contracts) (emphasis original). In the present case, the complaint essentially asserts that the union breached its bylaws and its constitution when it fraudulently refused to instate the appellant. The complaint thus created a "suit for violation[] of con-

tract[ ]" within the meaning of section 301, and the appellant's cause of action was preempted by federal law.

*Id.* at 1219. Similarly, in *DeSantiago v. Laborers International Union of North America, Local No. 1140,* 914 F.2d 125 (8th Cir. 1990), the Eighth Circuit held that a claim by union members against the local, alleging that the local had intentionally interfered with their employment contract and violated both the international and local constitutions, was preempted by federal law. *Id.* at 128. *See also Lewis v. International Brotherhood of Teamsters, et al., Local Union No. 771,* 826 F.2d 1310, 1312–14 (3rd Cir.1987).

While the Fourth Circuit has not yet had the occasion to address this precise issue, it has discussed related issues in a manner which leads us to conclude that it would agree with *Pruitt.* In *White v. National Steel Corp.,* 938 F.2d 474 (4th Cir.1991), *cert. denied,* ── U.S. ──, 112 S.Ct. 454, 116 L.Ed.2d 471 (1991), the Fourth Circuit reviewed claims brought by sixty-two former employees against National Steel, alleging that National Steel had breached individually negotiated employment contracts. The United States District Court for the Northern District of West Virginia ruled that § 301(a) preempted the employees' claims in part. On appeal, the Fourth Circuit affirmed in part and reversed in part, holding that § 301(a) did not preempt when the claims were based on individually negotiated employment contracts rather than a collective bargaining agreement.[2] *Id.* at 482–83. The Court in *White* explained that the plaintiffs were not in positions covered by a collective agreement, nor were they even represented by the union at all. *Id.* at 484. The Court made it clear, however, that if the employees' claims had been based upon a duty created by a collective bargaining agreement, § 301 would preempt that claim. *Id.* at 481–82. By contrast, the case now before us involves a union constitution which, like a collective bargaining agreement, defines the collective rights of the union membership under that document. Consequently, we believe that

the Fourth Circuit would find that § 301 controls in this case.

■ We believe the theories expressed in *Plumbers & Pipefitters, Wooddell,* and *Pruitt* are equally applicable to this fact situation. Union constitutions are an important form of labor contract. *Wooddell,* 502 U.S. at ──, 112 S.Ct. at 500, 116 L.Ed.2d at 430. The complaint alleges that the district violated its constitution when the appellee was laid off from his position of assistant compensation director because of the retroactive application of the fourth Constitution. Therefore, a "suit[ ] for violation of contract[ ]" was established within the scope of § 301 of 29 U.S.C.S. 185(a). Moreover, although a significant impact on the labor market is no longer required, the retroactive application of a new or revised union constitution could have serious ramifications on the stability of the labor market. *Plumbers & Pipefitters,* 452 U.S. at 624–25, 101 S.Ct. at 2551–52. It is logical that federal law govern because § 301(a) was clearly intended to encompass union constitutions, which may include union members in several states which may have different applicable laws. In *Local 174, Teamsters, et al. v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), the United States Supreme Court explained that "in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." *Id.* at 104, 82 S.Ct. at 577. The application of federal law promotes the uniform treatment of all union members under their constitution, regardless of where they reside.

The appellee counters by pointing to three state court decisions in which state law was applied. In *Rensch v. General Drivers, Helpers and Truck Terminal Employees, Local No. 120,* 268 Minn. 307, 129 N.W.2d 341 (1964), the Supreme Court of Minnesota affirmed a lower court order which found improper the retroactive application of the union by-laws amendment changing an officer's qualifications for the purpose of ousting the plaintiff from his office. The same result was reached in *Costello v. O'Kane,* 280 A.D. 70, 111 N.Y.S.2d 174 (1952), where the New

---

**2.** In *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), the Supreme Court noted that "Section 301 says noth-

ing about the content or validity of individual employment contracts." *Id.* at 394, 107 S.Ct. at 2431.

York Appellate Court held that, under the union's by-laws, an officer could only be removed after his two-year term had expired. Finally, in *Carroll v. N.C.R. Employees' Independent Union*, 12 Ohio App.2d 194, 232 N.E.2d 410 (1967), a union officer brought suit for unlawful discharge against the union which employed him because he wanted to affiliate with another union. In that case, the Ohio Supreme Court ruled that since the plaintiff was not claiming any rights arising under the federal statute, there is no preemption unless the federal statutes had deprived the state court of jurisdiction. In that case, the Ohio Court ruled that its jurisdiction was not withdrawn.

The respondents, however, fail to mention that all three of the cases discussed above occurred prior to the Supreme Court's interpretation of § 301 in *Plumbers & Pipefitters* and *Wooddell*, and the Federal Court of Appeals' decisions discussed above. Second, *Rensch* and *Costello* did not involve specific allegations of the applicability of federal law. Here, specific allegations of federal preemption were made below. Finally, none of the three state court decisions directly involved a union constitution, which has been specifically defined by the United States Supreme Court to be a contract within § 301(a) of the Labor Management Relations Act. We find these state court opinions to be inapplicable to the case now before us.

In summary, we conclude that pursuant to § 301(a) of the Labor Management Relations Act, 29 U.S.C.S. § 185(a), federal law preempts state law when a union member brings suit against the local or district based upon alleged violations of the local or district union constitution.[3] Accordingly, we reverse the judgment of the Circuit Court of Marion County and remand this case for retrial. Upon retrial, the Marion County Circuit Court is directed to apply federal labor law to the issues in this case.

Reversed and remanded with directions.